1  Matthew J. Preusch (Bar No. 298144)
   **KELLER ROHRBACK L.L.P.**
2  801 Garden Street, Suite 301
   Santa Barbara, CA 93101
3  (805) 456-1496, Fax (805) 456-1497
   mpreusch@kellerrohrback.com
4

5  ***Attorney for Plaintiff***
   ***(Additional Counsel on Signature Page)***
6

7

8                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
9                  SAN FRANCISCO DIVISION

10

11  VICTOR MUNIZ, individually and on behalf of
    all others similarly situated,

12                                    Plaintiff,          No.

13         v.                                             **COMPLAINT**
                                                          **CLASS ACTION**
14  WELLS FARGO & COMPANY, WELLS
    FARGO BANK, N.A., AND WELLS FARGO        **DEMAND FOR JURY TRIAL**
15  HOME MORGAGE

16                                    Defendants.

17

18

19

20

21

22

23

24

25

26

27

28
                                                              COMPLAINT
    No.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    JURISDICTION AND VENUE ................................................. 2

III.   INTRADISTRICT ASSIGNMENT ............................................ 2

IV.    PARTIES ........................................................................... 3

V.     FACTUAL ALLEGATIONS ..................................................... 3

       A.     Wells Fargo's Mortgage Rate Lock Fees ......................... 4

       B.     Wells Fargo's Widespread Practice of Wrongly Charging Fees to
              Borrowers ............................................................... 7

       C.     Plaintiff Muniz's Experience ........................................ 9

VI.    CLASS ACTION ALLEGATIONS ............................................ 11

VII.   TOLLING OF ANY APPLICABLE STATUTES OF LIMITATION ........ 13

VIII.  CAUSES OF ACTION ........................................................ 14

       FIRST CAUSE OF ACTION
       Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. .......... 14

       SECOND CAUSE OF ACTION
       Truth in Lending Act, 15 U.S.C. § 1601, et seq. ................................ 15

       THIRD CAUSE OF ACTION
       Unlawful, Unfair, or Fraudulent Business Practices under the California
       Unfair Competition Law,  Cal. Bus. & Prof. Code § 17200, ................. 16

       FOURTH CAUSE OF ACTION
       Violations of Nevada Deceptive Trade Practices Act, Nev. Rev. Stat.
       §598.0903, et seq. ................................................................. 18

       FIFTH CAUSE OF ACTION
       Unjust Enrichment ................................................................ 19

       SIXTH CAUSE OF ACTION
       Conversion .......................................................................... 20

       SEVENTH CAUSE OF ACTION
       Breach of Implied Covenant of Good Faith and Fair Dealing ............... 21

       EIGHTH CAUSE OF ACTION
       Fraud by Concealment ........................................................... 21

NINTH CAUSE OF ACTION
    Negligent Misrepresentation ................................................................ 24

TENTH CAUSE OF ACTION
    Declaratory Relief ............................................................................... 25

IX.    REQUEST FOR RELIEF ............................................................................ 25

X.    DEMAND FOR JURY TRIAL ..................................................................... 26

Plaintiff Victor Muniz brings this lawsuit on behalf himself and a proposed nationwide class of similarly situated people who financed their homes through Wells Fargo & Company, Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage, collectively referred to in this Complaint as Wells Fargo, the Bank, or Defendants. Plaintiff, though his Counsel, alleges the following based on publicly available information, investigation of Counsel, and information and belief.

## I.      INTRODUCTION

1.      Victor Muniz, a security dispatcher at a Las Vegas casino, recently bought his first home. Like many Americans, before buying the home he sought a mortgage from Wells Fargo, the nation's largest home lender. Also like many Americans, Mr. Muniz fell victim to Wells Fargo's systematic effort to charge mortgage borrowers unwarranted fees to complete the loan process.

2.      When Mr. Muniz began the financing process, Wells Fargo agreed to "lock" the offered mortgage interest rate for his potential loan during the closing process. When that process was delayed—not due to Mr. Muniz—Wells Fargo charged Mr. Muniz a fee to continue to lock the offered interest rate, despite assurances that it would not.

3.      On information and belief, what happened to Mr. Muniz is part of a systematic effort at Wells Fargo to charge home loan and refinance borrowers fees to extend their mortgage interest rate lock periods when the need for that extension was caused by the Bank, not the borrower.

4.      According to a whistleblower letter from a former Wells Fargo employee to lawmakers, the practice has resulted in Wells Fargo charging customers in the Los Angeles area alone millions of dollars in unwarranted mortgage interest rate lock extension fees. As one former Wells Fargo branch officer explained to *ProPublica*, the practice is "just stealing from people."

5.      Subsequent reporting by independent parties and investigation of Plaintiff's Counsel suggest the practice is not limited to California. The pattern of wrongfully charging customers the rate lock extension fees has reportedly resulted in Wells Fargo hiring a law firm to conduct an internal

No.                                    1                          COMPLAINT

review, the dismissal of several senior Wells Fargo mortgage executives, and a probe by the Consumer Financial Protection Bureau.

6.      To right this wrong, recover the fees unlawfully charged by Wells Fargo, and hold Wells Fargo accountable for yet another abuse of customer trust, Mr. Muniz brings this class action Complaint on behalf of himself and all similarly situated Wells Fargo borrowers nationwide.

## II.      JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on the federal statutory claims below, and the Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8.      This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendants, a substantial portion of the alleged wrongdoing occurred in this District and California, and Defendants have sufficient contacts with this District and California.

10.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District.

## III.      INTRADISTRICT ASSIGNMENT

11.      This case is properly brought in the San Francisco Division of the Northern District of California. Pursuant to Local Rule 3-2(c), cases are to be filed in the Division "in which a substantial part of the events or omissions which give rise to the claim occurred." Defendant Wells Fargo &

Company has its principal place of business in San Francisco at 420 Montgomery Street, less than two miles from this Court.

12.     As Plaintiff alleges that Defendants have engaged in illegal activity related to Plaintiff's mortgage, and that such illegal activity is allegedly pursuant to a systematic nationwide practice, a substantial part of the events or omissions about which complaint took place at Defendants' offices in San Francisco. Thus, pursuant to Local Rule 3-2(d), the proper venue for this case is the San Francisco Division of the Northern District of California.

## IV.     PARTIES

13.     Plaintiff Victor Muniz is a resident and citizen of Clark County, Nevada.

14.     Defendant Wells Fargo & Company is incorporated in Delaware with its principal place of business in San Francisco, California. Wells Fargo & Company is a financial services company with $1.9 trillion in assets and approximately 271,000 employees. It provides banking, insurance, investments, mortgage, and consumer and commercial finance through more than 8,500 locations, 13,000 ATMs, the internet and mobile banking, and has offices in 42 countries and territories.

15.     Defendant Wells Fargo Bank, N.A. is a national banking association chartered under the laws of the United States with its primary place of business in Sioux Falls, South Dakota. Wells Fargo Bank, N.A. provides Wells Fargo & Company personal and commercial banking services, and is Wells Fargo & Company's principal subsidiary. Well Fargo Bank, N.A. is also the successor by merger to Wells Fargo Home Mortgage, Inc.

16.     Defendant Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. and has its primary place of business in Des Moines, Iowa.

## V.     FACTUAL ALLEGATIONS

17.     Wells Fargo is the nation's largest residential mortgage provider. According to the Bank's most recent Annual Report, Wells Fargo's net gain on mortgage loan origination/sales activities

No.                                    3                              COMPLAINT

was $4.3 billion in 2016, up from $4.1 billion in 2015. Total mortgage loan originations for 2016 were $249 billion, according to the same report.

18.     Wells Fargo's billions of dollars in mortgage origination profits appear to have been built in part on a systematic effort to wrongly charge borrowers like Plaintiff fees to borrow money at their promised mortgage interest rate.

**A.     Wells Fargo's Mortgage Rate Lock Fees**

19.     When a customer approaches Wells Fargo to get a home mortgage or refinance, the Bank typically commits to fund the customer's loan at a stated interest rate *if* the home purchase and loan close within a given period of time, usually 30 to 90 days. That commitment is the interest "rate lock," and the 30 or 90 days is the "rate-lock period."

20.     If missing paperwork or other delays prevent the closing of a loan in the rate-lock period, the period can be extended—at a cost to Wells Fargo's customers. If the delay is the borrower's fault, the borrower pays a fee, the amount of which is based on the size of the loan. But if the delay is caused by the Bank's actions, the Bank is supposed to absorb the cost of extending the rate-lock period.

21.     Those "Rate Lock Extension Fees" can be significant. The fees are reportedly set at between .125 percent and .25 percent of the loan amount, depending on the type of loan. So, for example, for a loan of $500,000, the Bank would charge a Rate Lock Extension Fee of $1,250.

22.     According to reports, in the large majority of cases, closing delays are caused by the Bank. For example, Wells Fargo may not timely secure an appraisal due to a shortage of appraisers, the Bank may be staffed by underqualified underwriters, or lacks adequate staff (or adequately trained staff) to handle the volume of loan applications.

23.     Despite those Bank-caused delays, Wells Fargo managers pressure employees to blame customers for the delays so that the Bank can charge rate-lock extension fees. Wells Fargo also made it difficult to not assign borrowers the fee. For example, while Bank-paid rate-lock extension fees appear

to have required the approval of a regional manager, determinations of borrower-caused delays did not. Moreover, if mortgage consultants accumulated too many borrower-charged extension fees in their files, they were reportedly subject to reprimand.

24.    Predictably, perpetrating this scheme caused extreme stress to Wells Fargo employees, whose job it was to explain to frustrated customers why they were being charged a fee through no fault of their own. Employee stress caused by pressure to perform unscrupulous practices was also a hallmark of Wells Fargo's sham account scandal, and more generally is an indicator of corporate malfeasance.

25.    Many current and former Bank employees have spoken out. A person identifying himself as Jeffrey Clark, a former Wells Fargo manager in Los Angeles, commented on a *ProPublica* story that employees "were forced to push the rate lock extension to borrowers, when all along it was the processing delays in Underwriting" that caused the rate lock to expire. "I would say 99% of the time our requests denied by my Area/Regional management and were labeled as a borrower delay and therefore a charge for the extension was charge[d] to the borrower." If the borrower didn't agree to pay the fee, "we just cancelled the loan."

26.    In a detailed letter to lawmakers attached to this Complaint as Exhibit A and incorporated by reference, former Wells Fargo employee Frank Chavez described the practice of passing on "the cost of Interest Rate Lock Extensions . . . which Wells Fargo should have paid out of its own pocket":

> **RE:  IMPROPER/FRAUDULENT CHARGING of INTEREST RATE LOCK EXTENSION FEES to BORROWERS by WELLS FARGO HOME MORTGAGE**
>
> Dear Representatives and Senators,
>
> This is to inform members of Congress and others regarding a systematic effort on the part of area and regional management of Wells Fargo Home Mortgage in at least the Greater Los Angeles area to pass on the cost of Interest Rate Lock Extensions on pending conventional and jumbo mortgage loan applications which Wells Fargo should have paid out of its own pocket rather than the bank's borrowers/customers over a period of approximately two years.

27.     In his letter to lawmakers, Mr. Chavez wrote that even though the practice is "more complicated and less intuitive than the Fraudulent Account Opening Scandal of earlier this year, I believe the damage done to Wells Fargo mortgage customers in this case is much, much more egregious." That damage, Mr. Chavez wrote, stemmed from a "systematic effort to wrongly offload" the costs of interest rate lock extensions onto borrowers.

28.     Mr. Chavez's letter described some of the "most blatant" methods of assigning blame—and costs—to borrowers:

- In a practice known as an AIRL, Wells Fargo had the underwriter stop the Equal Credit Opportunity Act Regulation B "clock" and note the file as missing customer documentation or information, even though it had already been provided and was available for review.

- Noting delays caused by the banker or home mortgage consultant as "customer-caused" or "customer-related" delays.

29.     Mr. Chavez explained that Wells Fargo's own records would provide a paper trail of the alleged scheme:

> These three methods of systematically and wrongly shifting the blame for delays onto the customer can be evidenced by internal emails between: frontline HMC's or PMB mortgage bankers; the Los Angeles PMB Area Manager, Ken Vils; Regional WFHM Manager, Tom Swanson; Regional Processing Manager, Heidi Schlagel; and various branch managers throughout the Los Angeles area. PMB Bankers were instructed to send specifically structured/worded emails to one or more of the above managers (depending on the situation) requesting approval for needed Interest Rate Lock Extensions.

30.     More recently another former Los Angeles Wells Fargo employee, Mauricio Alaniz, alleged in an employee whistleblower lawsuit against Wells Fargo that Wells Fargo falsified records to "state that she had contacted customers and requested documentation when in fact she had not done so." When the rate lock period for those customers' expired, Wells Fargo allegedly told Ms. Alaniz that the

customers would be charged for the rate lock extension, even though she "had already reported that the delays were not the customers' fault and that [Wells Fargo's] loan processor had falsified records to appear otherwise."

31.     While Mr. Chavez's letter and Ms. Alaniz's allegations reveal the practices they witnessed in the Los Angeles area—practices Mr. Chavez described as Wells Fargo's "concerted effort to wrongly pass the cost on to the consumer/borrower for costs the bank should have paid"— those practices do not appear to be limited to Los Angeles or California.

**B.     Wells Fargo's Widespread Practice of Wrongly Charging Fees to Borrowers**

32.     Wells Fargo's rate lock practices have reportedly already led to dismissals of the head of Wells Fargo's home mortgage sales who oversaw thousands of loan officers, a Pacific division manager, and the regional sales manager for Oregon and Nevada. Investigation by Counsel and publicly available information suggest the practice is widespread.

33.     One person identifying themselves as a former Wells Fargo employee posted online that "This was not just in LA it was in [New Jersey] as well. Time after time borrowers were charged the extension fee when it was not their fault but the bank's due to understaffed processing and underwriting!"

34.     Two former loan offices and one former Wells Fargo branch manager from Oregon reportedly told *ProPublica* that "they were instructed to charge customers for mortgage lock extensions even when the bank was responsible."

35.     The practice has also been the subject of consumer complaints from around the nation to federal agencies. For example, a 2013 complaint filed with the Office of Comptroller of Currency by a borrower in Iowa explained that after Bank-caused delays, a borrower was "informed I need to pay close to $500 more at closing time to extend my rate. . . I don't feel I should be penalized by additional closing costs when I did not cause any delay."

No.                              7                         COMPLAINT

36.     Another complaint filed with the OCC states, "I would like Wells Fargo's use of rate-lock extension fees to be investigated as I believe I can[]not be the only consumer this has happened to."

37.     A 2016 complaint to the Federal Deposit Insurance Corporation from 2016 tells a similar story: After numerous delays, Wells Fargo informed a borrower that if they want to continue the financing "process they 'require' a fee of $250.00 for a rate lock because of all the delays. I feel that they have delayed our loan in order to make us pay additional money and this is unjust."

38.     Other customers have posted similar complaints online:

- "[T]he Wells Fargo loan consultant force me to pay my extension fee which was a substantial amount of money (over $3,000!). The delays were caused by the bank and I didn't want to lose the low rate I had locked."

- "The loan officer at Wells Fargo forced us to pay a rate lock extension on our condo refinance, when the delay was the bank's fault. . . . Unfortunately, we had no choice since we were changing our loan program and we were more than 60 days in the process with a good rate at the time."

- "Yes, this happened to me as well with Wells…They had all my paperwork for about 3 months and delayed it intentionally."

- "We ended up paying a rate lock extension of $4,500 purely because our rate was great and the cost of not getting that rate was far worse."

- "My rate lock expired on August 13 and [I] was told that I had to extend the rate. . . . All sorts of excuses are given. . . . This is a nightmare that I am going through with them."

39.     In short, Plaintiff's experience—described in more detail below—appears to be part of a widespread, "systematic" effort to foist unwarranted fees onto Wells Fargo borrowers.

40.     Wells Fargo was or should have been aware of this widespread practice. Attached to Mr. Chavez's letter to lawmakers is 2015 correspondence to Mike Heid, former President of Wells Fargo Home Mortgage, and other senior Wells Fargo executives from a dissatisfied borrower describing his experience with a rate lock extension fee.

41.     Though Wells Fargo knew or should have known about these practices, it failed to act to stop them. As a result, since Mr. Chavez sent his letter, Wells Fargo's rate lock extension fee practice has become the subject of a federal investigation by the Consumer Financial Protection Bureau, as Wells Fargo has acknowledged. Also as a result, Wells Fargo recently wrongly charged Plaintiff for a rate lock extension fee after the Bank caused a delay in the processing of his loan application.

## C.     Plaintiff Muniz's Experience

42.     For years, Mr. Muniz has been looking for the perfect first house. In June, he found it: a home in Sandy Valley, Nevada, close to where his parents live, that he could afford.

43.     To buy the house, he went to Wells Fargo to get a home loan secured by a mortgage. On June 29, 2017, Wells Fargo issued Mr. Muniz a loan estimate that included a quoted interest rate of 5.875% on a 30-year fixed mortgage. That estimate included a "rate lock" that would expire by August 7.

44.     Mr. Muniz diligently provided Wells Fargo all the information the Bank requested to process the financing, but the process was bogged down by Bank-caused delays. For example, communication issues between the Bank and the appraiser it hired, who was apparently out of the country, slowed the required appraisal.

45.     On August 7, the date the rate lock was set to expire, a Bank employee texted to say Mr. Muniz would not have to pay the fee to extend the rate lock:

And just confirmed that the lender is paying for the lock extension so you guys are good on that.

That's good news, thank you

Delivered

46.     Despite that assurance, the next day the Bank issued an updated closing disclosure that included under "Loan Costs" a $287.50 fee for "Borrower Paid Rate Lock Extension." Mr. Muniz was told a Regional Manager had reversed the decision that Mr. Muniz should not pay the fee.

47.     At that point, Mr. Muniz had no choice but to accept the fee to timely complete the closing, or he risked losing the house. He had already invested hundreds of dollars in closing-related costs such as the home inspection. On August 16, he closed on his new home. His closing documents included the borrower-paid rate lock extension fee:

| Other Loan Charges | |
|---|---|
| Processing Fee | 1,095.00 |
| Rate Lock Extension | 287.50 |

48.     Mr. Muniz has sent an email to several Wells Fargo employees, explaining that he was being charged a fee to extend his interest rate lock when the delay in closure was the Bank's fault, not his own. But Wells Fargo has not paid the fee.

49.     Mr. Muniz has therefore suffered concrete, particularized injury caused by Wells Fargo's actions, which this lawsuit can redress.

## VI.    CLASS ACTION ALLEGATIONS

50.    This matter is brought by Plaintiff on behalf of himself and those similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). The Class that Plaintiff seeks to represent is defined as follows:

> All persons who obtained a Wells Fargo mortgage, including a refinance,
> for a residential property and were charged one or more fees to extend a
> mortgage interest rate lock period ("Rate Lock Extension Fees") based on
> Wells Fargo's practice of delaying loan approval and charging customers
> Rate Lock Extension Fees.

51.    Excluded from the Class are Wells Fargo's officers, directors and employees; and the judicial officers and associated court staff assigned to this case, and the immediate family members of such officers and staff.

52.    **Numerosity**: The members of the Class are so numerous that joinder of all members would be impractical. The proposed Class likely contains thousands of members. Wells Fargo is the nation's largest home lender, controlling a roughly 12 percent market share in 2016. The precise numbers of members can be ascertained through discovery, which will include Defendants' underwriting and other records.

53.    **Commonality and Predominance**: Common questions of law and fact predominate over any questions affecting only individual members of the Class.

54.    For Plaintiff and the Class, the common legal and factual questions include, but are not limited to the following:

- What was the scope of the "systematic effort to wrongly offload the cost of" interest rate lock extensions described in Mr. Chavez's letter;

No.                                              11                                 COMPLAINT

- What policies or procedures were in place to enact the systematic effort to charge borrowers rate lock extension fees;

- Whether Wells Fargo has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices with the sale of its financial products;

- Whether Wells Fargo violated the federal statutes enumerated in the causes of action below;

- Whether Wells Fargo has been unjustly enriched or is liable for conversion;

- Whether Wells Fargo breached the implied covenant of good faith and fair dealing;

- Whether Wells Fargo negligently represented to Wells Fargo borrowers the nature of rate-lock fees;

- Whether, because of Wells Fargo's conduct, Plaintiff and the Class have suffered damages; and if so, the appropriate amount thereof; and

- Whether, because of Wells Fargo's misconduct, Plaintiff and the Class are entitled to equitable and declaratory relief, and, if so, the nature of such relief.

55.     **Typicality**: The representative Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all the members of the Class have been injured by the same wrongful practices of Wells Fargo. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

56.     **Adequacy**: Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor his attorneys have any interests contrary to or in conflict with the Class.

57.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58.     Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Wells Fargo has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

59.     Wells Fargo has, or has access to, address and/or other contact information for the members of the Class, which may be used to provide notice of the pendency of this action.

### VII.    TOLLING OF ANY APPLICABLE STATUTES OF LIMITATION

60.     Plaintiff and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, that Wells Fargo had a secret, systematic effort to charge borrowers wrongful fees to extend mortgage interest rate lock periods. Any statutes of limitation otherwise applicable to any claims asserted herein have thus been tolled by the discovery rule.

61.     All applicable statutes of limitation have also been tolled by Wells Fargo's knowing, active, and ongoing fraudulent concealment of the facts alleged herein. Wells Fargo has reportedly known about the practice of wrongfully charging rate lock fees to borrowers, but has not publicly acknowledged the problem. Any otherwise applicable statutes of limitation have therefore been tolled by the Bank's exclusive knowledge and concealment of the facts alleged herein.

62.     Defendants were, and are, under a continuous duty to disclose to Plaintiff and Class members the true cost of financing at Wells Fargo, including the likelihood that the Bank's delays would result in the borrower being charged a fee to extend their mortgage interest rate lock period. Wells Fargo did not make that disclosure, and Plaintiff and Class members reasonably relied upon the Bank's active concealment of these facts that rendered their statements misleading. Based on the foregoing, Wells Fargo is estopped from relying on any statutes of limitation in defense of this action

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*
### Asserted on Behalf of Plaintiff and the Class

63.     Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

64.     The Real Estate Settlement Procedures Act ("RESPA") prohibits accepting "unearned fees" including "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

65.     In providing mortgages to Plaintiff and the Class, Wells Fargo rendered real estate settlement services—as that term is defined in RESPA, at 12 C.F.R. § 1024.2(b), and by courts—in connection with a transaction involving a federally-related mortgage loan.

No.                                        14                                        COMPLAINT

66.     Wells Fargo violated RESPA by accepting and splitting an unearned settlement service fee—*i.e.*, a required fee to extend the period to lock-in the offered mortgage interest rates of Plaintiff and the Class—between different entities. The fee was not charged for a service actually performed because it was paid for no reason: Because Wells Fargo delayed the closing process for Plaintiff and the Class, Wells Fargo should have charged nothing to extend their rate locks.

67.     On information and belief, that unearned fee was split or shared among Wells Fargo entities. Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., provides the Bank's retail mortgage lending services, obtaining fees from borrowers in the process. On information and belief, Wells Fargo Home Mortgage and Wells Fargo Bank, N.A. then share those unearned fees with Wells Fargo Bank, N.A.'s parent company, Wells Fargo & Company, a separate entity that considers mortgage origination as part of its revenue and represents to the public that it provides mortgage services and is "the leading U.S. home lender."

68.     That fee was not bona fide compensation for services actually performed because Wells Fargo's own actions necessitated extending the rate-lock periods.

69.     As a result, Plaintiff and the Class are entitled to damages of three times the amount of the extension rate locks fees, attorney fees, and costs. 12 U.S.C. § 2607(d).

**SECOND CAUSE OF ACTION**
**Truth in Lending Act, 15 U.S.C. § 1601, *et seq.***
**Asserted on Behalf of Plaintiff and the Class**

70.     Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

71.     Congress passed the Truth in Lending Act ("TILA") to ensure consumer borrowers understood the true cost of consumer credit.

72.     As one way to accomplish that goal, TILA requires creditors to clearly and conspicuously disclose to borrowers the accurate and full terms of the legal relationship between creditors and consumer borrowers, like Plaintiff and Class Members.

73.     TILA requires that creditors providing residential mortgages provide, among others things, disclosure of finance charges, fees, and a good faith estimate of the costs of closing a residential mortgage loan. 15 U.S.C. § 1638(a).

74.     Wells Fargo is a creditor under TILA. 15 U.S.C. § 1602(g).

75.     Wells Fargo violated TILA by failing to in good faith disclose to borrowers who obtained mortgage interest rate locks that Wells Fargo had a system under which it would charge borrowers finance charges/fees to extend the rate lock period in cases of bank-caused delay, increasing financing and/or closing costs in a way borrowers could not predict.

76.     Plaintiff and the Class have been injured and have suffered monetary losses because of Wells Fargo's violations of TILA.

77.     Plaintiff and the Class are therefore entitled to recover actual and/or statutory damages and attorneys' fees and costs from Wells Fargo, as provided by 15 U.S.C. § 1640(a).

**THIRD CAUSE OF ACTION**
**Unlawful, Unfair, or Fraudulent Business Practices under the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200,**
**Asserted on Behalf of Plaintiff and the Class**

78.     Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

79.     California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."  Wells Fargo engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL by knowingly and intentionally concealing from Plaintiffs and other Class members that Wells Fargo had systematic scheme to wrongfully charge residential borrowers rate-lock fees; and by violating both federal and

No.                                    16                              COMPLAINT

California laws, including RESPA, TILA, and the Consumer Financial Protection Bureau's Regulation N, by failing to disclose the rate lock fee scheme in its advertising of rate lock services.

80.     Wells Fargo tells borrowers that they "can count on Wells Fargo, the nation's #1 home lender." And Wells Fargo's unlawful, fraudulent, and unfair business acts were done with the intention of convincing buyers to finance their residential loans with Wells Fargo.

81.     Wells Fargo's systematic scheme to charge fees to borrows, and concealment thereof, were material to Plaintiff and the Class. Had they known the truth about that scheme, Plaintiff and the Class would not have taken steps to prevent being charged Rate Lock Extension Fees that should not have been assessed against them, including, but not limited to seeking financing elsewhere. And Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealments, and omissions.

82.     On information and belief, Wells Fargo's systematic scheme to charge fault-less borrowers mortgage interest rate lock fees emanated from its California headquarters, and has resulted in the dismissal of several California-based executives. For example, Wells Fargo reportedly dismissed Drew Collins, the manager of the Pacific division, who appears to have been based in California, in part due to some of the issues Wells Fargo found as part of its internal review of the practice.

83.     Plaintiff and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information. Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiff and the Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to Plaintiff and Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203 and 3345, and any other just and proper relief available under the California UCL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FOURTH CAUSE OF ACTION

### Violations of Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*
### Asserted on Behalf of Plaintiff and the Class

84.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

85.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et seq. prohibits deceptive trade practices in the sale of goods or services.

86.    In the course of its business, Wells Fargo, through their agents, employees, and/or subsidiaries, violated the Nevada DTPA as detailed in this Complaint. In offering the good or service of mortgage interest rate locks to its customers, Wells Fargo engaged in the unfair or deceptive acts or practices, as defined in Nev. Rev. Stat. §§ 598.0915 to 598.0925, by failing to disclose the Bank's practice of requiring borrowers to pay mortgage rate lock fees when Wells Fargo's delays caused the rate lock to expire. That misled consumers.

87.    Specifically, Wells Fargo's misrepresentations and omissions regarding the good or service of mortgage interest rate locks involved knowing false representations in a transaction; "bait-and-switch" advertising; statements that services were needed when none were; failing to disclose a material fact; knowingly misrepresenting the legal rights, obligations, or remedies of Plaintiff and the Call; and acts or practices in violation of the state or federal laws discussed in this Complaint.

88.    Defendants' scheme and concealment of that scheme was material to Plaintiff and the Class, as Defendants intended, because mortgage interest rate locks are typically offered as an enticement to initiate the financing process with Wells Fargo. Had they known the truth, Plaintiff and Class members could have taken steps to avoid being charged unwarranted Rate Lock Extension Fees by Wells Fargo, including, but not limited to obtaining financing elsewhere.  Plaintiff and Class members were therefore the victims of Wells Fargo's consumer fraud.

89.     Plaintiff and Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Wells Fargo did not reveal its systematic effort to charge borrowers mortgage rate lock fees. Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

90.     Wells Fargo had an ongoing duty to Plaintiff and the Class to refrain from unfair and deceptive practices under the Nevada DTPA in the course of their business. Specifically, Wells Fargo owed Plaintiff and Class members a duty to disclose all likely costs of financing, and Wells Fargo intentionally concealed those costs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

91.     Wells Fargo's deceptive conduct was not done incompliance with any locate, state, or federal orders or laws.

92.     Plaintiff and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

93.     Defendants' violations present a continuing risk to Plaintiff and the Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

94.     Pursuant to Nev. Rev. Stat. §§ 41.600 and 598.0977, Plaintiff and the Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Nevada DTPA

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**Asserted on Behalf of Plaintiff and the Class**

95.     Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

96.     Because of Defendants' systematic unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiff and the Class through the payment of fees wrongly charged to extend mortgage interest rate locks.

97.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the Class, because Wells Fargo used illegal, deceptive, and/or unfair practices to wrongfully charge mortgage rate lock fees and did not disclose the practice.

98.     Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and the Class for the monies paid to Defendants because of the unfair, deceptive, and/or illegal practices.

## SIXTH CAUSE OF ACTION
### Conversion
### Asserted on Behalf of Plaintiff and the Class

99.     Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

100.    Plaintiff and Class members own and had the right to possess the money that Defendants demanded to extend the interest rate lock period.

101.    Defendants, without the right to do so, interfered with Plaintiff's and Class members' possession of this money by wrongfully charging fees to extend mortgage interest rate lock periods, when delays in closing were the Bank's—not the borrower's—fault.

102.    Any consent Defendants obtained from Plaintiff and the Class to obtain that money was secured by fraud and/or mistake, namely the concealment by Defendants from Plaintiff and the Class of the systematic effort to wrongfully charge interest rate lock fees to borrowers. Plaintiff and Class members also were coerced to pay the fees under duress because if they did not, they risked paying higher interest rates or losing the right to purchase their homes.

103.    Defendants' wrongful taking of fees damaged Plaintiff and Class members in an amount that is capable of identification through Defendants' records.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### Asserted on Behalf of Plaintiff and the Class

104.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

105.    To secure a home mortgage, Plaintiff and the Class entered into contracts with Wells Fargo, under which contracts Plaintiff and Class members performed all material requirements.

106.    Those contracts, like all contracts, contained an implied covenant and duty on the parties to act in good faith and deal fairly with one another.

107.    In charging Plaintiff and the Class a fee to extend their mortgage interest rate lock period as part of a systematic effort to impose such fees on faultless borrowers, Wells Fargo breached that implied covenant and duty, acting contrary to the spirit and intention of its contract with borrowers.

108.    Wells Fargo—not borrowers—knew of Wells Fargo's policy to charge fees to faultless borrowers, and used that to its advantage. Wells Fargo also acted in bad faith and did not deal fairly by imposing the fees on borrowers who were forced to pay the fees or risked foregoing a home purchase or paying more to finance, as Wells Fargo knew.

109.    Because of Wells Fargo's breach, Plaintiff and the Class have been harmed, including by foregoing the right to finance at the locked-in rate without having to pay an additional fee, and are entitled to all available damages.

## EIGHTH CAUSE OF ACTION
### Fraud by Concealment
### Asserted on Behalf of Plaintiff and the Class

110.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

111.    Wells Fargo deceived Plaintiff and Class members while providing consumer credit for the purchase or refinance of residential properties.

112.    While Wells Fargo disclosed some facts to Plaintiff and Class members, including the fact that their mortgage interest rate lock could expire, Wells Fargo intentionally failed to disclose a related material fact: That if Wells Fargo caused the expiration of the rate lock, it had a scheme to systematically charge borrowers the fee to extend that rate lock period. That intentional failure to disclose a material fact rendered Wells Fargo's partial disclosures deceptive.

113.    Wells Fargo also was under common law and statutory duties as an FDIC-insured provider of residential mortgage loans and servicing to disclose the true cost of borrowing to Plaintiff and the Class.

114.    Plaintiff and Class Members did not know, and could not have known, that the nation's largest residential mortgage lender systematically, wrongfully charged its borrowers for mortgage interest rate lock fees. Wells Fargo did not provide that information, and has not provided that information after laying off several senior executives, hiring a law firm to conduct an internal review, and acknowledging an inquiry of the practice by a federal agency.

115.    For, example, Wells Fargo Home Mortgage's website discusses rate lock fees, but does not discuss that Bank-caused delays may result in borrowers paying such fees at the end of the rate lock period:

**What is a rate lock?**

- A rate lock gives you protection from financial market fluctuations that could affect your interest rate range.
- You can choose to lock or not lock your interest rate range. On the date and time you lock, that interest rate range remains available to you for a set period of time.
  - If there are no subsequent changes to your loan and your interest rate range is locked, the interest rate range on your application generally remains the same.
  - If there are changes to your loan, your final interest rate at closing may be different.

**What is the difference between "locking" and "floating"?**

- **Locking** ensures that your loan pricing will be unaffected during the lock-in period by giving you a specified period of protection from financial market fluctuations in interest rates.
- **Locking** sets the range of pricing available to you; it doesn't guarantee that a specific rate will apply.
  - Your final rate, which may not be determined until closing, will reflect the pricing that was available at the time you locked.
- **Floating** – or not locking – means your rate will fluctuate with the up and down movements of the market.
  - The benefit to floating is if interest rates were to decrease, you would have the option of locking in at a lower level of rates.

**When can I lock and how much does it cost?**

The fee for locking varies.

- You can lock anytime you locate a property, or start your refinancing process, up until ten business days before the closing.
- You can select a specific length of time for your lock, usually 60 days.

116.     By not providing borrowers information about the systematic, wrongful charging of rate lock extension fees, Wells Fargo intended to deceive borrowers, so that they would rely on Wells Fargo for financing, and so Wells Fargo could remain the nation's largest home lender.

117.     Plaintiff and Class members reasonably relied on Wells Fargo's statements. The Bank holds itself out as the nation's largest residential lender, and Plaintiff and Class members could assume that the nation's largest lender would be able to complete the financing process in the given rate-lock period, and would not charge borrowers fees when the Bank could not.

118.     Had Plaintiff and the Class known about the practice, they would not have applied to Wells Fargo for residential financing. No reasonable person would.

119.     Because of the Bank's deceptive concealment, Plaintiff and the Class were harmed by paying fees that they should not have been required to pay to complete the financing or refinancing of

their home loans. The Bank's system on wrongful fees—and concealment of that system—were substantial factors causing that harm.

**NINTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**Asserted on Behalf of Plaintiff and the Class**

120.     Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

121.     Plaintiff and Class Members were harmed when Wells Fargo misrepresented an important fact: That locking their interest rate at the beginning of the financing process provides "protection" to borrowers from market fluctuations.

122.     In fact, Wells Fargo knew or should have known that was not true, and that in the event of Bank-caused delays, Wells Fargo would likely charge Plaintiff and Class members a fee to extend their rate lock period and preserve the offered interest rate, making those borrowers subject to market fluctuations unless they agreed to pay the unwarranted fee.

123.     Wells Fargo also was under common law and statutory duties as an FDIC-insured provider of residential mortgage loans and servicing to disclose the true cost of borrowing to Plaintiff and the Class.

124.     By representing that their interest rate was securely "locked" and they were protected, Wells Fargo intended to induce Plaintiff and the Class to secure their financing or refinancing with Wells Fargo, and Plaintiff's and Class members' reasonable reliance on that representation was a substantial factor in them doing so.

125.     Plaintiff and Class members were harmed by Wells Fargo's negligent representation because they were faced with the choice of paying wrongfully-charged fees at the end of their rate lock period or foregoing a home purchase, losing a refinance, and/or paying a higher interest rate.

126.     Plaintiff and the Class therefore request all available damages and relief.

## TENTH CAUSE OF ACTION
### Declaratory Relief
### Asserted on Behalf of Plaintiff and the Class

127.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

128.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

129.    As described above, this Court has jurisdiction over this matter, and therefore may declare the rights of Plaintiff and the Class.

130.    Plaintiff and the Class therefore seek an order declaring unlawful Wells Fargo's practice of charging faultless borrowers fees to extend their mortgage interest rate lock period, and that Wells Fargo is liable to Plaintiff and the Class for damages caused by that practice.

## IX.    REQUEST FOR RELIEF

131.    Plaintiff, individually and on behalf of all others similarly situated, request judgments against Defendants as follows:

A.    For an order certifying the Class and, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), and appointing Plaintiff as representative of the Class and appointing the lawyers and law firm representing Plaintiff as counsel for the Class;

B.    Declaring Wells Fargo's actions to be unlawful;

C.    Injunctive relief, including public injunctive relief permanently enjoining Wells Fargo from performing further unfair and unlawful acts as alleged herein;

D.    For all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Class, including disgorgement, unjust enrichment, and all other relief allowed under applicable law;

E.     Granting Plaintiff and the Class awards of restitution and/or disgorgement of Wells Fargo's profits from its unfair and unlawful practices described above;

F.     For costs;

G.     For both pre-judgment and post-judgment interest on any amounts awarded;

H.     For treble damages insofar as they are allowed by applicable laws;

I.     For appropriate individual relief as requested above;

J.     For payment of attorneys' fees and expert fees as may be allowable under applicable law; and

K.     For such other and further relief, including declaratory relief, as the Court may deem proper.

## X.     DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 28th day of August, 2017.

KELLER ROHRBACK L.L.P.


By */s/ Matthew J. Preusch*
    Matthew J. Preusch (Bar No. 298144)
    801 Garden Street, Suite 301
    Santa Barbara, CA 93101
    Tel: (805) 456-1496
    Fax: (805) 456-1497
    mpreusch@kellerrohrback.com

    Derek Loeser, *pro hac vice forthcoming*
    Gretchen Freeman Cappio*, pro hac vice forthcoming*
    **KELLER ROHRBACK L.L.P.**
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    Tel: (206) 623-1900
    Fax: (206) 623-3384
    dloeser@kellerrohrback.com
    gcappio@kellerrohrback.com

    ***Attorneys for Plaintiff***