Amanda L. Groves (SBN: 187216)
agroves@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA  94111-5802
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Kobi K. Brinson (admitted *pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (admitted *pro hac vice*)
sknight@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:    (704) 350-7700
Facsimile:    (704) 350-7800

Attorneys for Defendants
WELLS FARGO & COMPANY,
WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| VICTOR MUNIZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and WELLS FARGO HOME MORTGAGE,<br><br>Defendants. | Case No. 3:17-cv-04995-MMC<br><br>**DEFENDANTS WELLS FARGO & COMPANY'S, WELLS FARGO BANK, N.A.'S AND WELLS FARGO HOME MORTGAGE'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 27, 2018<br>Time: 9:00 a.m.<br>Courtroom: 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 27, 2018 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. ("WFBNA"), and Wells Fargo Home Mortgage ("WFHM") will and hereby do move the Court to dismiss Plaintiff Victor Muniz's First Amended Class Action Complaint ("Amended Complaint") with prejudice pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to plead with specificity.

Specifically, Defendants seek dismissal of the Amended Complaint on the bases that Plaintiff lacks standing to bring consumer protection claims under California law, and his claims each separately fail for several different reasons.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the record in this action.

Dated: February 1, 2018                    Respectfully submitted,

                                            **WINSTON & STRAWN LLP**

                                            By: /s/ *Amanda L. Groves*

                                            Amanda L. Groves (SBN: 187216)
                                            101 California Street, 35th Floor
                                            San Francisco, CA  94111-5802
                                            Telephone:     (415) 591-1000
                                            Facsimile:     (415) 591-1400

                                            Kobi K. Brinson (admitted *pro hac vice*)
                                            Stacie C. Knight (admitted *pro hac vice*)
                                            300 South Tryon Street, 16th Floor
                                            Charlotte, NC 28202
                                            Telephone:     (704) 350-7700
                                            Facsimile:     (704) 350-7800

                                            *Attorneys for Defendants*
                                            *Wells Fargo & Company*
                                            *Wells Fargo Bank, N.A.*
                                            *Wells Fargo Home Mortgage, a division of Wells Fargo*
                                            *Bank, N.A.*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     SUMMARY OF ALLEGED FACTS ........................................................................... 1

III.    ARGUMENT ................................................................................................................. 2

        A.      Legal Standards ................................................................................................. 2

                1.      Rule 12(b)(1) ........................................................................................ 2

                2.      Rule 12(b)(6) ........................................................................................ 3

        B.      Plaintiff's Amended UCL Claim Still Fails As a Matter of Law. ................. 4

        1.      Plaintiff, a Nevada Resident, Does Not Have Standing to Assert California
                Consumer Protection Claims Against Defendants. ........................................ 4

        2.      Because Plaintiff Cannot Plead He Lacks An Adequate Legal Remedy,  His
                UCL Claim Fails. ........................................................................................... 7

        3.      The Newly Pled "Acts and Practices" in Paragraph 82 Are Not Bases For a
                UCL Claim. .................................................................................................... 9

        C.      Nevada's DTPA Does Not Apply to Real Estate Lending Transactions. ............ 13

        D.      Plaintiff's RESPA Claim Should Be Dismissed. .......................................... 15

        E.      Plaintiff's TILA Claim Finds No Support in the Statute Itself. ................... 17

        F.      Plaintiff's Conversion Claim Fails to State a Claim for Relief. .................. 19

        G.      Plaintiff's Claim For Breach of the Implied Covenant of Good Faith and Fair
                Dealing Fails as a Matter of Law. ................................................................. 20

        H.      Plaintiff's Fraudulent Concealment Claim Should Be Dismissed. .............. 21

                1.      There is No Duty To Disclose a Purported "Scheme." ...................... 22

                2.      Plaintiff Does Not Allege Reliance .................................................... 24

                3.      The Economic Loss Rule Bars Plaintiff's Fraud Claim .................... 24

CONCLUSION ..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Aurora Loan Servs.*,
   No. 2:09-cv-1790-KJD-LRL, 2010 WL 2773796 (D. Nev. July 8, 2010) ...................................14

*Andren v. Alere, Inc.*,
   207 F. Supp. 3d 1133 (S.D. Cal. 2016)..................................................................................11, 12

*In re Apple and AT & T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ....................................................................................6

*Arroyo v. Chattem, Inc.*,
   926 F. Supp. 2d 1070 (N.D. Cal. 2012) ...................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................3

*Attygala v. Wells Fargo Bank, N.A.*,
   No. CV 12-10075 MMM, 2013 WL 12129400 (C.D. Cal. May 5, 2013)...............................23, 24

*Bank of Am. v. Super. Ct.*,
   198 Cal. App. 4th 862 (2011) ..................................................................................................22

*Bartello v. CitiMortgage, Inc.*,
   2:13-cv-01891-GMN-VC, 2014 WL 1514174 (D. Nev. Apr. 16, 2014)......................................14

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................................3

*Betsinger v. D.R. Horton, Inc.*,
   232 P.3d 433 (Nev. 2010).........................................................................................................14

*Bird v. First Alert, Inc.*,
   No. C 14-3585 PJH, 2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ...........................................8

*Boulware v. Crossland Mortg. Corp.*,
   291 F.3d 261 (4th Cir. 2002) ...................................................................................................16

*Cannon v. Wells Fargo Bank N.A.*,
   917 F. Supp. 2d 1025 (N.D. Cal. 2013) ....................................................................................6

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ....................................................................................4

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)....................................................................................................................3

*Compton v. Midland Mortg.*,
  No. CV 16-00817-RGK, 2016 WL 7479418 (C.D. Cal. Apr. 19, 2016) ..................................20

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) ..........................................................................................................16

*Darrin v. Bank of Am., N.A.*,
  No. 2:12-CV-00228-MCE, 2013 WL 877087 (E.D. Cal. Mar. 7, 2013) .....................................19

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) ....................................................................................10, 11

*Deteresa v. Am. Broad. Cos.*,
  121 F.3d 460 (9th Cir. 1997) ............................................................................................22

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2nd Cir. 1996) ............................................................................................16

*In re Ditropan XL Antitrust Litig.*,
  No. M:06-CV-01761-JSW, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007) ....................................3

*Dowers v. Nationstar Mortg., LLC*,
  852 F.3d 964 (9th Cir. 2017) ............................................................................................14

*Durkee v. Ford Motor Co.*,
  No. C 14-0617 PJH, 2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ...............................................8

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
  No. 14-CV-04809-HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) ...................................7, 8

*Echevarria v. Chi. Title and Trust Co.*,
  256 F.3d 623 (7th Cir. 2001) ............................................................................................16

*Edwards v. First Am. Corp.*,
  798 F.3d 1172 (9th Cir. 2015) ....................................................................................16, 17

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) .................................................................................10

*Finnegan v. Washoe Cty.*,
  No. 3:17-cv-00002-MMD-WGC, 2017 WL 3299040 (D. Nev. Aug. 2, 2017)..........................20

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
  642 F. Supp. 2d 1012 (N.D. Cal. 2012) .................................................................................11

*Freeman v. Quicken Loans, Inc.*,
  566 U.S. 624 (2012) ..........................................................................................................15

*French v. JP Morgan Chase Bank, N.A.*,
  No. 13–cv–969–BEN (BLM), 2013 WL 6528510 (S.D. Cal. Nov. 25, 2013) ..............................9

*Gomez v. Carmax Auto Superstores Cal., LLC*,
No. 2:14-cv-09019-CAS, 2015 WL 350219 (C.D. Cal. Jan. 22, 2015)..........................................24

*Gray v. Toyota Motor Sales, U.S.A.*,
No. CV 08-1690 PSG, 2012 WL 313703 (C.D. Cal. Jan. 23, 2013) ..............................................12

*Gross v. Wash. Mut., Inc.*,
No. 06 Civ. 4340 (RLC), 2007 WL 1404435 (S.D.N.Y. May 10, 2007) ......................................19

*Hall v. Sea World Entm't, Inc.*,
No. 3:15-CV-660-CAB-RBB, 2016 WL 4595948 (S.D. Cal. May 13, 2016) ..............................10

*Handy v. LogMeIn, Inc.*,
No. 1:14-cv-01355–JLT, 2015 WL 4508669 (E.D. Cal. July 24, 2015) ......................................12

*Haug v. Bank of Am., N.A.*,
317 F.3d 832 (8th Cir. 2003) ......................................................................................................16

*Hester v. Vision Airlines, Inc.*,
No. 2:09-cv-00117-RLH-RJJ, 2009 WL 4893185 (D. Nev. Dec. 16, 2009)................................20

*Ingels v. Westwood One Broad. Servs., Inc.*,
28 Cal. Rptr. 3d 933 (Cal. Ct. App. 2005) ..................................................................................9

*Jefferson v. Chase Home Fin. LLC*,
No. C06 6510 TEH, 2007 WL 1302984 (N.D. Cal. May 3, 2007)..........................................19, 20

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...............................................................................................3, 24

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ..............................................................................................................7

*Landucci v. State Farm Ins. Co.*,
65 F. Supp. 3d 694 (N.D. Cal. 2014) ..........................................................................................20

*Lewis v. Casey*,
518 U.S. 343 (1996)......................................................................................................................3

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ......................................................................................................22

*Linglong Americas Inc. v. Get it on Wheels, Inc.*,
No. 2:17-01378 WBS GGH, 2018 WL 288014 (E.D. Cal. Jan. 4, 2018)....................................21

*Martinez v. Wells Fargo Home Mortg., Inc.*,
598 F.3d 549 (9th Cir. 2010) ........................................................................................................9

*McKell v. Wash. Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) ..................................................................................................19

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
No. 12-4457 SC, 2013 WL 791457 (N.D. Cal. Mar. 4, 2013)........................................6

*Middleton v. Cavalry Portfolio Servs., LLC*,
No. 2:16-CV-01760-MMD-PAL, 2017 WL 969182 (D. Nev. Mar. 13, 2017) ...............4

*Morris v. Green Tree Servicing, LLC*,
No. 2:14-cv-01998-GMN-CWH, 2015 WL 4113212 (D. Nev. July 8, 2015)...............14

*Mort v. United States*,
86 F.3d 890 (9th Cir. 1996) ........................................................................................7

*Moss v. Infinity Ins. Co.*,
197 F. Supp. 3d 1191 (N.D. Cal. July 14, 2016) ...........................................................8

*In re MRU Holdings Sec. Litig.*,
769 F. Supp. 2d 500 (S.D.N.Y. 2011)..........................................................................23

*Munning v. Gap, Inc.*,
238 F. Supp. 3d 1195 (N.D. Cal. 2017) ....................................................................7, 8

*Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*,
73 F. Supp. 3d 1206 (N.D. Cal. 2014) ........................................................................25

*Nguyen v. Nissan N. Am., Inc.*,
No. 16-CV-005591-LHK, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) .....................8

*Norwest Mortg., Inc. v. Super. Ct.*,
72 Cal. App. 4th 214 (1999) .........................................................................................5

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014) ............................................................................6

*O'Shea v. Littleton*,
414 U.S. 488 (1974)......................................................................................................3

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ........................................................................11

*Porter v. Bank of Am., N.A.*,
No. 1:14-cv-00431-LJO-SAB, 2014 WL 1819396 (E.D. Cal. May 7, 2014)..............23

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
11 Cal. App. 4th 1026 (1992) .....................................................................................21

*Reyes v. BAC Home Loans Serv'g, LP*,
2:11-cv-01367-KJD, 2012 WL 2367803 (D. Nev. June 21, 2012)........................13, 14

*Rhynes v. Stryker Corp.*,
No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011)................................7, 8

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ....................................................................................................25

*Robinson v. C.R. Bard, Inc.*,
  No. 16-CV-00942-JST, 2016 WL 3361825 (N.D. Cal. June 17, 2016) ....................7, 8

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..........................................................9, 10, 11

*Rupracht v. Union Sec. Ins. Co.*,
  No. 3:07-CV-00231-RCJ, 2011 WL 6109574 (D. Nev. Dec. 7, 2011) .......................19

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
  No. CV 15-8629 FMO (Ex), 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016)................8

*Schmier v. U.S. Ct. of Appeals for the Ninth Cir.*,
  279 F.3d 817 (9th Cir. 2001) ..........................................................................................3

*Schroeder v. United States*,
  569 F.3d 956 (9th Cir. 2009) ..........................................................................................7

*Sizer v. New England Life Ins. Co.*,
  871 F. Supp. 2d 1071 (D. Or. 2012) .............................................................................16

*Smith v. City and Cty. of S.F.*,
  225 Cal. App. 3d 38 (1990) ..........................................................................................20

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ..................................................................................................5

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. C 13-2965 MMC, 2015 WL 106340 (N.D. Cal. Jan. 7, 2015) ..............................20

*Taragan v. Nissan N. Am., Inc.*,
  No. C 09–3660 SBA, 2013 WL 3157918 (N.D. Cal. June 20, 2013).......................4, 23

*Tidenberg v. Bidz.com, Inc.*,
  No. CV 08-5553 PSG, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009)................................5

*Toromanova v. Wells Fargo Bank, N.A.*,
  No. 2:12-CV-00328-GMN, 2013 WL 1314974 (D. Nev. Mar. 28, 2013)....................15

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ..................................................................4, 5, 6

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
  No. 2:11-CV-09517-ODW (RZ), 2012 WL 1525012 (C.D. Cal. Apr. 26, 2012) ..........6

*Vega v. Ocwen Fin. Corp.*,
  No. 2:14-cv-04408-ODW(PLAx), 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) .....13

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*Villa v. First Guar. Fin. Corp.*,
No. 2:09-cv-02161-GMN-RJJ, 2010 WL 2953954 (D. Nev. July 23, 2010) ................................23

*WeBoost Media S.R.L. v. LookSmart Ltd.*,
No. C 13-5304 SC, 2014 WL 2621465 (N.D. Cal. June 12, 2014) ...............................................25

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ......................................................................................................3

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013) .......................................................................................10

*Wine Bottle Recycling, LLC v. Niagara Sys. LLC*,
No. 12-1924 SC, 2013 WL 5402072 (N.D. Cal. Sept. 26, 2013) .................................................25

*Zapata Fonseca v. Goya Foods Inc.*,
No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)..........................................8

**Statutes**

12 U.S.C. § 2602 ............................................................................................................................16

12 U.S.C. § 2604 ............................................................................................................................17

12 U.S.C. § 2607 ...............................................................................................................15, 16, 17

15 U.S.C. § 1601 ............................................................................................................................18

15 U.S.C. § 1604 ............................................................................................................................18

15 U.S.C. § 1638 ............................................................................................................................17

Nev. Rev. Stat. § 598.0915–598.0925 ...........................................................................................14

Nev. Rev. Stat. § 598.0934 .............................................................................................................14

**Other Authorities**

12 C.F.R. Pt. 226, App. H ..............................................................................................................18

12 C.F.R. § 7.4002(b)(2) ..................................................................................................................9

12 C.F.R. § 1024.2 ....................................................................................................................17, 18

Fed. R. Civ. P. 8 ...............................................................................................................................3

Fed. R. Civ. P. 9 ..........................................................................................................3, 4, 10, 24

Fed. R. Civ. P. 12 .........................................................................................................................2, 3

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

3:17-cv-04995-MMC

Fed. R. Civ. P. 23 ...................................................................................................................17

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I.   **INTRODUCTION**

Wells Fargo's original motion to dismiss demonstrated that the theory underlying the majority of Plaintiff's claims—that Wells Fargo failed to disclose a purported "scheme" to wrongfully charge borrowers fees to extend the interest rate lock periods on their loans—fails as a matter of law.  Plaintiff's Amended Complaint deleted a few references to the word "scheme," but nonetheless still relies on that theory, which cannot support a claim for relief.  And Plaintiff's attempt to bolster that theory—by complaining about Wells Fargo's public statements, advertisements, and loan disclosures—cannot save his claims.  Plaintiff nowhere alleges that he read or relied on any of those statements, let alone that any gave rise to a duty to disclose, as required for a claim based on omission.

Moreover, and as before, Plaintiff is a Nevada resident suing over his Nevada transaction. He lacks standing to pursue claims under the California Unfair Competition Law ("UCL"), for which he has an acknowledged an adequate remedy at law in any event.  Plaintiff realleges his RESPA and TILA claims, and his claims for conversion and beach of the implied covenant of good faith and fair dealing.  But those claims fare no better, and the Amended Complaint should be dismissed with prejudice.

## II.   **SUMMARY OF ALLEGED FACTS**

Plaintiff's claims arise out of a mortgage loan he closed with Wells Fargo just twelve days before he filed his original Complaint.  According to Plaintiff, sometime around June 2017, he wanted to buy a house, and applied for a mortgage loan with Wells Fargo.  Am. Compl. ¶¶ 45-46. According to Plaintiff, he "locked" the interest rate on June 29, 2017, and his loan was scheduled to close on August 7, 2017.  *Id.* ¶ 46.

Plaintiff claims that he "diligently provided Wells Fargo all of the information [it] required to process the financing, but the process was bogged-down by Bank-caused delays."  *Id.* ¶ 47. However, the only delay Plaintiff identifies was—in Plaintiff's own words—a result of the appraiser being "out of the country."  *Id.*  Plaintiff's loan therefore was not ready to close by the August 7, 2017 expiration of his rate lock period, and Wells Fargo told him he would have to pay a fee to extend the lock period.  *Id.* ¶¶ 47, 49.  Plaintiff complained to Wells Fargo during the loan

transaction, claiming "that he was being charged a fee to extend his interest rate lock when the delay in clos[ing] was the Bank's fault, not his own." *Id.* ¶ 51.  Despite his disagreement with the decision, Plaintiff chose to move forward with the loan and to extend his rate lock period, for which Wells Fargo charged him a $287.50 extension fee.  *Id.* ¶ 50.

Plaintiff claims here—as in his original Complaint—that, unbeknownst to him, Wells Fargo had a "scheme" to charge borrowers fees to extend their rate lock periods when the delay was Wells Fargo's.  *See, e.g.*, *id.* ¶¶ 19, 26, 31, 63, 82-85, 91.  According to Plaintiff, Wells Fargo failed to disclose this purported scheme to him and other borrowers, and they suffered damages as a result. *See, e.g.*, *id.* ¶ 82.  New to the Amended Complaint, Plaintiff now also alleges that Wells Fargo's "public representations about its Rate Lock Extension Fees … omitted material facts," *i.e.*, that "it will charge [extension fees] to borrowers even when the bank is at fault for a delay in closing."  *Id.* ¶¶ 82-83.  Plaintiff also now alleges that other, unidentified "description[s] of Rate Lock Extension Fees" omitted material facts by not disclosing that "[Wells Fargo] will charge those fees to borrowers even when the bank is at fault for a delay in closing."  *Id.* ¶¶ 82-86.  Whether Plaintiff himself read or relied on any of those advertisements or descriptions he does not say.

Based on those allegations, Plaintiff purports to bring claims on behalf of a nationwide class under RESPA, TILA, California's UCL and the Nevada Deceptive Trade Practices Act ("DTPA"), and for conversion, breach of the implied covenant of good faith and fair dealing, and fraud by concealment.  Plaintiff has sued Wells Fargo Bank, N.A. ("WFBNA"), a national banking association which offers mortgage loans through its operating division, Wells Fargo Home Mortgage—which Plaintiff also has sued as if it were a separate entity.  Am. Compl. ¶¶ 16-17. Plaintiff has named as a third defendant, Wells Fargo & Company, which is the parent of WFBNA and, as a financial holding company, does not conduct banking activities or provide mortgages.  *See* Request for Judicial Notice ("RJN") ¶ 1; Am. Compl. ¶ 16 (alleging that Wells Fargo Bank, N.A.— not Wells Fargo & Company—conducts banking activities and mortgage lending).

## III.   ARGUMENT

### A.   Legal Standards

#### 1.   Rule 12(b)(1)

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

1    A Rule 12(b)(1) motion attacks the complaint for lack of subject matter jurisdiction.  Fed. R.

2    Civ. P. 12(b)(1).  "Standing pertains to a federal court's subject matter jurisdiction under Article III,

3    and thus, is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."

4    *In re Ditropan XL Antitrust Litig*., No. M:06-CV-01761-JSW, 2007 WL 2978329, at *1 (N.D. Cal.

5    Oct. 11, 2007) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  Plaintiffs cannot seek

6    relief on behalf of themselves or a putative class if they cannot establish that they have standing to

7    assert the claims made in their pleadings.  *See O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974).  To

8    survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), "named plaintiffs . . .

9    must allege and show that they personally have been injured."  *Lewis v. Casey*, 518 U.S. 343, 357

10   (1996) (internal citation omitted).  Further, to establish standing when requesting injunctive relief, a

11   plaintiff must demonstrate the likelihood of future injury.  *City of L.A. v. Lyons*, 461 U.S. 95, 105

12   (1983).  Finally, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to

13   draw unwarranted inferences in order to find standing.  *See Schmier v. U.S. Ct. of Appeals for the*

14   *Ninth Cir*., 279 F.3d 817, 820 (9th Cir. 2001).

15              **2.      Rule 12(b)(6)**

16    A complaint fails to state a claim under Rule 12(b)(6) unless it contains "enough facts to state

17   a claim to relief that is plausible on its face."  *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).  The

18   court should not accept unreasonable inferences or unwarranted deductions of fact.  *Ashcroft v.*

19   *Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported

20   by mere conclusory statements, do not suffice").  In other words, a complaint must allege "more than

21   labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*,

22   550 U.S. at 555; *see also id.* at 678 ("[Rule 8(a)] demands more than an unadorned, the-defendant-

23   unlawfully-harmed-me accusation.").  Rather, the factual allegations "must be enough to raise a right

24   to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

25    Fraud-based claims—including those under state consumer fraud statutes—are subject to

26   Rule 9(b), which requires that "[i]n all averments of fraud ... the circumstances constituting fraud . . .

27   shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires that the allegations state

28   "the who, what, when, where, and how of the misconduct charged."  *Kearns v. Ford Motor Co*., 567

F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and citation omitted) (applying

Rule 9(b)'s heightened pleading standards to claims for violations of the UCL); *Middleton v.*

*Cavalry Portfolio Servs., LLC*, No. 2:16-CV-01760-MMD-PAL, 2017 WL 969182, at *4 (D. Nev.

Mar. 13, 2017) (same as to Nevada's Deceptive Trade Practices Act).

### B.   Plaintiff's Amended UCL Claim Still Fails As a Matter of Law.

In response to Wells Fargo's motion to dismiss the original Complaint, Plaintiff revised the

allegations underlying his UCL claim.  Although he still relies on the "failure to disclose a scheme"

theory" (which fails for the reasons discussed in part III.H.1., *supra*),[1] Plaintiff now also claims that

Wells Fargo's "public representations about its Rate Lock Extension Fees" and unidentified

"description of Rate Lock Extension Fees" omitted material facts by not disclosing that "[Wells

Fargo] will charge those fees to borrowers even when the bank is at fault for a delay in closing."

Am. Compl. ¶¶ 82-86.  Plaintiff's UCL claim still fails as a matter of law and must be dismissed.

### 1.   Plaintiff, a Nevada Resident, Does Not Have Standing to Assert
### California Consumer Protection Claims Against Defendants.

Plaintiff is a Nevada resident, who obtained a mortgage loan from a WFBNA branch in

Nevada, to buy a house in Nevada.  Am. Compl. ¶¶ 14, 45-46.  Based on these undisputed facts,

Plaintiff does not have standing to proceed under California's UCL.

"California courts have long acknowledged a general presumption against the extraterritorial

applications of state laws."  *Gentges v. Trend Micro Inc*., No. C 11-5574 SBA, 2012 WL 2792442,

at *6 (N.D. Cal. July 9, 2012); *Churchill Vill., L.L.C. v. Gen. Elec. Co*., 169 F. Supp. 2d 1119, 1126

(N.D. Cal. 2000).  Remedies under California's UCL thus are only "available to non-California

residents if those persons are harmed by wrongful conduct occurring in California."  *In re Toyota*

*Motor Corp*., 785 F. Supp. 2d 883, 916-918 (C.D. Cal. 2011) (dismissing UCL and CLRA claims

brought by non-California residents).  This is because courts "ordinarily presume the [California]

---

[1] *See* Am. Compl. ¶¶ 82 (Wells Fargo violated by the UCL by "***concealing from Plaintiff and other Class members that [it] had a systematic scheme*** to wrongfully charge residential borrowers rate lock fees" and "by violating both federal and California laws, including RESPA, TILA, and the Consumer Financial Protection Bureau's Regulation N, by ***failing to disclose the rate lock fee scheme*** in its advertising of rate lock services") (emphasis added).

1  Legislature did not intend the [state's] statutes … to have force or operation beyond the boundaries

2  of the state." *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222 (1999) (citations

3  omitted).  And, nothing in the "language of the UCL [and] its legislative history provides any basis

4  for concluding the Legislature intended the UCL to operate extraterritorially."  *Sullivan v. Oracle*

5  *Corp.*, 51 Cal. 4th 1191, 1207 (2011).

6      "In determining whether the UCL … appl[ies] to non-California residents, courts consider

7  where the defendant does business, whether the defendant's principal offices are located in

8  California, where class members are located, and the location from which [the relevant] decisions

9  were made."  *In re Toyota*, 785 F. Supp. 2d at 917.  Here, Plaintiff does not allege that his loan

10  transaction with WFBNA occurred in California (nor could he), nor does he allege that he was

11  harmed in California in any way (again, nor could he).  Indeed, the Amended Complaint's sole

12  connection to California is Plaintiff's attempt to sue Wells Fargo & Company, a financial holding

13  company whose principal place of business is in California.  *See* RJN ¶ 1.  However, the fact that

14  Wells Fargo & Company is located in California is insufficient to overcome the presumption against

15  the extraterritorial application of California's laws.  For example, in *Tidenberg v. Bidz.com, Inc.*, No.

16  CV 08-5553 PSG (FMOX), 2009 WL 605249, at *4-5 (C.D. Cal. Mar. 4, 2009), the court dismissed

17  a UCL claim brought by a Texas plaintiff when the sole allegation linking the defendants' contacts

18  with California was their principal place of business in California.  As the court explained, just

19  "because [defendants'] principal place of business is in California, a fact that Defendants concede,"

20  the court cannot presume "that any false and misleading statements emanated from California."  *Id.*

21  (citations omitted).

22      The Court also should reject Plaintiff's obvious attempt to plead around this fatal hurdle by

23  claiming the alleged "scheme" somehow emanated from Wells Fargo's California headquarters.[2]

24  *See* Am. Compl. ¶ 85 ("On information and belief, Wells Fargo's systematic scheme to charge

25

26  [2] While Wells Fargo & Company's principal place of business is in California, WFNBA's main
office, as set forth in its articles of association and as alleged in the Amended Complaint, is in Sioux

27  Falls, South Dakota.  *See* Am. Compl. ¶ 16; https://www.sec.gov/Archives/edgar/data/1510890/
000119312511014456/dex991.htm.  Moreover, the home lending division of WFBNA that

28  administers rate lock extension fees is headquartered in Des Moines, Iowa.  Am. Compl. ¶ 17.

faultless borrowers mortgage interest rate lock fees emanated from its California headquarters and/or offices, has harmed a large but yet-to-be determined number of California borrowers, and has resulted in the dismissal of several California-based executives.").  Plaintiff's allegations are entirely conclusory and insufficiently detailed to establish the required nexus to California.  *See In re Toyota*, 785 F. Supp. 2d at 916-918 (even though plaintiffs' complaint alleged that the defendant did business throughout California and that certain corporate decisions forming the basis for the plaintiffs' claims were made in California, the court dismissed plaintiffs' UCL claims because the plaintiffs failed to allege "with sufficient detail" that the alleged conduct emanated from California); *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 2:11-CV-09517-ODW (RZ), 2012 WL 1525012, at *6 (C.D. Cal. Apr. 26, 2012) (court unwilling to extend application of section 17200 where "decision to increase the policies' premiums (the bad-faith conduct causing the alleged loss) was made in Connecticut," as "neither the conduct causing injury nor the injury itself occurred in California").[3]  That there may be some California borrowers who may have been harmed in California also is insufficient to extend the application of the UCL to sweep in conduct that has occurred outside California and to nonresidents.  *See Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1055 (N.D. Cal. 2013) (that "some of the class members will undoubtedly reside in California (i.e., an injury would have taken place in the state)" is insufficient to extend application of UCL to Wells Fargo, despite being headquartered in California where plaintiffs were residents of Florida and alleged harm occurred in Florida).  The Court should reach the same result here, and reject Plaintiff's attempt to apply California law to a Nevada resident's claim arising out of a Nevada transaction.

---

[3] *See also O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1006-07 (N.D. Cal. 2014) (holding UCL did not apply to work performed outside California by out-of-state drivers, precluding UCL claims asserted by such out-of-state drivers); *In re Apple and AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing UCL claims by non-California residents who purchased their iPad and data plans outside of California); *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-4457 SC, 2013 WL 791457, at *5 (N.D. Cal. Mar. 4, 2013) (holding nonresident plaintiff's UCL claims against car rental company "too attenuated" where the alleged deception and injuries arose in Oklahoma, not California, despite allegations that plaintiff made her online reservation in California).

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

1          **2.**        **Because Plaintiff Cannot Plead He Lacks An Adequate Legal Remedy,**

2                      **His UCL Claim Fails.**

3          Even if Plaintiff could apply the UCL to his Nevada transaction, the claim still should be

4 dismissed because Plaintiff cannot plead that he lacks an adequate legal remedy.  "It is a basic

5 doctrine of equity jurisprudence that courts of equity should not act … when the moving party has an

6 adequate remedy at law." *Mort v. U.S.*, 86 F.3d 890, 892 (9th Cir. 1996) (internal quotation marks

7 and citation omitted); *see also Schroeder v. U.S.*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable

8 relief is not appropriate where an adequate remedy exists at law.").  Accordingly, "[a] plaintiff

9 seeking equitable relief in California must establish that there is no adequate remedy at law

10 available." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (internal quotation

11 marks and citation omitted).  Plaintiff's Third Cause of Action under California's UCL "provide[s]

12 for only equitable relief." *Id.*; *see also Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-CV-

13 04809-HSG, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015) ("Apart from civil penalties, which

14 are not at issue here, the UCL and FAL provide for only equitable relief") (citing *Korea Supply Co.*

15 *v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)).

16          In other words, Plaintiff must establish that he has no adequate remedy at law or he is

17 precluded from seeking equitable relief under the UCL.  *See, e.g.*, *Munning*, 238 F. Supp. 3d 1195.

18 And here, Plaintiff has not and cannot make that showing, since his complaint seeks monetary

19 damages based on common law and other statutory claims for the same conduct.  *See id.* (collecting

20 cases); Am. Compl. ¶¶ 71, 80, 97, 112, 125, IX. Request for Relief, D.[4]  As such, Plaintiff's UCL

21 claims must be dismissed.

22          Indeed, courts in this circuit routinely hold that when a plaintiff has sought (or could seek)

23

---

24 [4] It is of no moment that Plaintiff ultimately may not succeed at pleading his other claims for which
he seeks a monetary remedy.  *See Rhynes*, 2011 WL 2149095, at *4 ("Plaintiffs' argument that they

25 will have no adequate remedy at law if their other claims fail is unavailing.  Where the claims
pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable.")

26 (emphasis in original); *Robinson v. C.R. Bard, Inc.*, No. 16-CV-00942-JST, 2016 WL 3361825, at

27 *3 (N.D. Cal. June 17, 2016) (same).  Dismissal on this ground is also appropriate "even where a
plaintiff attempts to plead equitable relief in the alternative." *Duttweiler*, 2015 WL 4941780, at

28 *9.

---

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

money damages in connection with statutory and common law causes of action on the same factual predicates, the plaintiff has an adequate remedy at law and may not seek equitable remedies. *See, e.g.*, *Munning*, 238 F. Supp. 3d at 1203 ("[S]everal courts in this district have barred claims for equitable relief—including claims for violations of California consumer protection statutes—at the motion to dismiss stage where plaintiffs have alleged other claims presenting an adequate remedy at law."); *Duttweiler*, 2015 WL 4941780, at *9 ("Courts routinely dismiss UCL claims at the pleading stage on account of the plaintiff's failure to plead facts demonstrating an entitlement to equitable relief."); *Bird v. First Alert, Inc*., No. C 14-3585 PJH, 2014 WL 7248734, at *5-6 (N.D. Cal. Dec. 19, 2014) (dismissing UCL claim seeking restitution and an injunction "because [plaintiff] has an adequate remedy at law in her claim for damages under the CLRA"); *Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-005591-LHK, 2017 WL 1330602, at *4-5 (N.D. Cal. Apr. 11, 2017) (dismissing UCL claim seeking an injunction and a "restitutionary redesign program" when Plaintiff also sought damages under other statutes); *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) (dismissing UCL claims without leave to amend because plaintiff also sought compensatory damages, thus providing an adequate remedy at law); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing the plaintiffs' UCL claims because plaintiffs' other claims allowed for recovery of monetary damages); *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (Ex), 2016 WL 7486600, at *14 (C.D. Cal. Sept. 27, 2016) (same); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. July 14, 2016) ("Where . . . a plaintiff can seek money damages if she prevails on claims for breach of contract or breach of the implied covenant of good faith and fair dealing, she has an adequate remedy at law" and is precluded from seeking equitable relief under the UCL); *Robinson*, 2016 WL 3361825, at *3 (plaintiff's "section 17200 must [] be dismissed" where plaintiff also sought compensatory damages); *Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014) ("Because the UCL provides for only equitable remedies, and plaintiffs have an adequate remedy at law for the alleged Song–Beverly Act violation, plaintiff's UCL claim must be dismissed.").

    As in each of these cases, Plaintiff here seeks money damages in connection with his non-

1    UCL statutory and common law claims, and he thus has an adequate remedy at law.  Plaintiff's UCL

2    claim should be dismissed, and with prejudice.

3              **3.      The Newly Pled "Acts and Practices" in Paragraph 82 Are Not Bases For**

4                       **a UCL Claim.**

5              In response to Wells Fargo's motion to dismiss the original Complaint, Plaintiff added

6    allegations to his UCL claim.  Now, in addition to his "failure to disclose a scheme" theory, Plaintiff

7    alleges that Wells Fargo violated the UCL by "making public representations about its Rate Lock

8    Extension Fees that omitted material facts" because those representations "did not . . . disclose that

9    [Wells Fargo] will charge those fees to borrowers even when the bank is at fault for a delay in

10   closing."  Am. Compl. ¶ 82.[5]  Thus, according to Plaintiff, Wells Fargo's "public representations"

11   regarding its rate lock extension fees were "half truths," giving rise to liability under the UCL.  *Id.*

12   ¶ 84.  Plaintiff similarly alleges that an unidentified "description of Rate Lock Fees," which

13   presumably refers to the Lock-In Agreement described later in the Amended Complaint (*id.* ¶¶ 105-

14   108), failed to make that same disclosure.  *Id.* ¶ 83. These new allegations do not save Plaintiff's

15   UCL claim.[6]

16              First, it is axiomatic that named plaintiffs must plead and prove that they relied on any

17   misleading statements that form the basis of their UCL claims.  *See, e.g.*, *Rojas-Lozano*, 159 F.

---

18   [5] Plaintiff's reliance on "RESPA, TILA, and the Consumer Financial Protection Bureau's Regulation

19   N" to support his UCL claim, Am. Compl. ¶ 82, fails.  "A defendant cannot be liable under [the
     UCL] for committing unlawful business practices without having violated another law."  *Ingels v.*

20   *Westwood One Broad. Servs., Inc*., 28 Cal. Rptr. 3d 933, 938 (Cal. Ct. App. 2005) (internal
     quotation marks and citation omitted).  As explained below, Plaintiff's RESPA and TILA claims

21   fail.  Accordingly, because he "fails to state a claim under either statute," he "necessarily cannot
     state a UCL unlawful prong claim."  *Rojas-Lozano v. Google, Inc*., 159 F. Supp. 3d 1101, 1117

22   (N.D. Cal. 2016).  Plaintiff's reference to "Regulation N" also is insufficient, because he "merely
     make[s] conclusory allegations that there ha[s] been [a] violation[] of th[is] [regulation], while

23   providing absolutely no factual basis for th[is] claim[]."  *French v. JP Morgan Chase Bank, N.A*.,
     No. 13–cv–969–BEN (BLM), 2013 WL 6528510, at *6 (S.D. Cal. Nov. 25, 2013).  Plaintiff's

24   conclusory reference to "Regulation N" "therefore fail[s] to state a claim under the 'unlawful' prong
     of the UCL."  *Id.*

25   [6] To the extent any of Plaintiff's claims purport to challenge the fees themselves, those claims

26   plainly would be preempted by the National Bank Act.  *See, e.g.*, *Martinez v. Wells Fargo Home
     Mortg., Inc*., 598 F.3d 549, 555 (9th Cir. 2010) (UCL claim based upon overcharging of

27   underwriting fees and marking up of tax service fees was preempted under 12 C.F.R.
     § 7.4002(b)(2)).

28

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Supp. 3d at 1114, 1118.  But Plaintiff here does not allege that he ever saw any of the "public statements," the unidentified "advertising of rate lock services" or even that he actually read (let alone relied on) the description of rate-lock extension fees in any agreement he had with Wells Fargo.  Without such allegations, his UCL claim fails under Rule 9(b), and for failure to allege reliance (which also defeats standing).  *See, e.g.*, *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 n.3 (N.D. Cal. 2012) ("Plaintiffs' claims . . . also fail because Plaintiff does not allege ever seeing any of the alleged statements on the website; indeed, he does not even allege that the statements were present on the website at the time of his purchase."); *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1143-44 (N.D. Cal. 2013) (granting motion to dismiss UCL claim because "[p]laintiffs also fail to plead that they ever saw, read, or were even aware of any website before this suit"); *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1080 (N.D. Cal. 2012) (dismissing UCL and fraud claims for failure to adequately plead reliance: "Plaintiff's allegations that she relied on 'promotion, advertising and, [sic] marketing' are not pleaded with particularity.  While Plaintiff describes material present in sections of Defendant's website, nowhere does Plaintiff allege when, where, or how she was exposed to or accessed this promotion, advertising, or marketing prior to purchase."); *Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2016 WL 4595948, at *4 (S.D. Cal. May 13, 2016) ("citations to websites" failed to sufficiently allege reliance required for UCL claim because the complaint "fail[ed] to identify whether Plaintiffs actually saw such statements, when Plaintiffs saw them, where Plaintiffs saw them, and why such statements are measurably false").

Nor has Plaintiff alleged that the subject representations created a duty to disclose, as required for an omission claim under the UCL.  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835-36 (2006).  The only "public representations" Plaintiff identifies are (1) Wells Fargo's alleged statement that borrowers "can count on Wells Fargo, the nation's #1 home lender,"[7] and (2) "Wells Fargo's representations about Rate Lock Extension Fees" on the "Wells

---

[7] This generalized statement is non-actionable puffery that cannot form the basis of a UCL claim as a matter of law.  *See, e.g.*, *Elias*, 903 F. Supp. 2d at 854-55 (defendant's statement that its computers were "ultra-reliable" were "generalized, vague, and unspecified assertions" amounting to "mere puffery" and accordingly were not actionable under the UCL); *Oestreicher v. Alienware Corp.*, 544

Fargo Home Mortgage website" and its "online glossary of mortgage and home equity terms." *Id.*
¶¶ 82, 105, 118.  However, none of those statements say anything about extending the rate lock
period, including what circumstances would necessitate an extension or who will pay for the
extension.  *See id.*  In fact, the first statement says nothing about rate locks at all, and the other two
"public representations" simply explain what a rate lock is.  *See id.*  Although "omissions can form
the basis of a . . . UCL claim," the "omission must be contrary to a representation actually made by
the defendant, or an omission of a fact the defendant was obliged to disclose."  *Rojas-Lozano*, 159 F.
Supp. 3d at 1119.  Because the "public representations" Plaintiff references say nothing at all about
extended rate lock periods, Plaintiff has not identified, and indeed, cannot identify, how Wells
Fargo's alleged omissions were "contrary to" those statements.  *See id.*

Moreover, Plaintiff has not alleged a single fact that might otherwise give rise to the
following instances which would trigger a duty to disclose: "(1) when the defendant is in a fiduciary
relationship with the plaintiff; (2) when the defendant ha[s] exclusive knowledge of material facts
not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff;
and (4) when the defendant makes partial representations but also suppresses some material facts."
*Andren v. Alere, Inc*., 207 F. Supp. 3d 1133, 1142 (S.D. Cal. 2016) (internal quotation marks and
citation omitted).

First, it is well-established that, absent special circumstances—none of which are alleged
here—lenders owe no fiduciary duties to borrowers.  *See, e.g.*, *Fortaleza v. PNC Fin. Servs. Grp.,
Inc*., 642 F. Supp. 2d 1012, 1025 (N.D. Cal. 2012).

Second, to "[t]o demonstrate 'exclusive knowledge by the defendant,' a plaintiff must
provide sufficient factual allegations to support his claim that ***at the making of the contract***, the
defendant was aware of facts which could not be known by the plaintiff and which, if known, would
dissuade the plaintiff from completing the [transaction]."  *Handy v. LogMeIn, Inc*., No. 1:14-cv-
01355–JLT, 2015 WL 4508669, at *6 (E.D. Cal. July 24, 2015) (emphasis added).  Plaintiff's own

---

F. Supp. 2d 964, 973 (N.D. Cal. 2008) (defendant's "generalized and vague statements of product
superiority such as 'superb, uncompromising quality' and 'faster, more powerful, and more
innovative than competing machines'" were "non-actionable puffery" and could not support a UCL
claim).

1    allegations refute any claim that, at the time of his loan, Wells Fargo had "exclusive knowledge" of

2    the allegedly withheld information.  Plaintiff devotes pages of his own pleading to information that

3    was publicly-available as far back as January 23, 2017—almost seven months before his loan

4    closed—discussing interest rate lock extension fees at Wells Fargo in detail.  *See, e.g.*, Am. Compl.

5    ¶¶ 27, 63. Plaintiff cannot rely on publications about these "facts," on the one hand, and then, on the

6    other, claim those facts were available only to Wells Fargo.  *See Andren*, 207 F. Supp. 3d at 1142-43

7    (plaintiffs could not allege exclusive knowledge when their complaint referenced publicly-available

8    studies, an FDA warning letter, and recall letters—all of which predated the plaintiffs' alleged

9    injuries—outlining the same product defects alleged in the complaint).

10          Finally, Plaintiff does not allege that Wells Fargo "actively concealed" or "suppressed"

11   anything from Plaintiff himself.  *See Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG

12   (JCx), 2012 WL 313703, at *10 (C.D. Cal. Jan. 23, 2013) (dismissing fraudulent concealment claim

13   and noting that "the complaint is wholly devoid of any allegation that defendants actively concealed

14   the information '*from Plaintiff*'") (emphasis in original).  To allege active concealment, a plaintiff

15   must allege "affirmative acts on the part of the defendant[ ] in hiding, concealing, or covering up the

16   matters complained of."  *Andren*, 207 F. Supp. 3d at 1143.  "[G]eneralized, conclusory allegations of

17   active concealment, without specific facts that defendant[ ] actively tried to conceal the

18   [information]" are not enough.  *Id.*  Moreover, mere nondisclosure cannot constitute active

19   concealment as a matter of law.  *See Gray*, 2012 WL 313703, at *9 (C.D. Cal. Jan. 23, 2012).

20   Indeed, as one court has recognized, "if mere nondisclosure constituted 'active concealment,' the

21   duty requirement would be subsumed and any material omission would be actionable.  This is not

22   the law."  *Id.*  Here, Plaintiff's repeated use of the word "concealment" does not, and cannot,

23   adequately allege active concealment.  For these same reasons, Plaintiff has not adequately alleged

24   that Wells Fargo "suppressed" anything from him.

25          Although not specifically alleged in his UCL claim, to the extent the claim relies on the Price

26   Range Protection Agreement (or "Lock-In Agreement," as Plaintiff identifies it), the claim still fails.

27   That agreement provides:

28

> This pricing is valid until the Expiration Date of the Rate Lock shown above.  If loan does not close and funds disbursed on or before the expiration date, your loan will be re-priced and this may result in pricing increases.  However, at the option of Wells Fargo Bank, N.A., you may be permitted to keep your rate the same by paying an extension fee to extend the rate lock.

Am. Compl. ¶ 107.  This provision concerns the initial rate lock period for the loan, and provides that if the loan does not close by the Expiration Date, it is possible for the borrower to keep his interest rate ("at the option of Wells Fargo") if the borrower pays a fee to extend the lock period.  *See id*.  As described above, Plaintiff never alleges that he read or took any action in response to the Price Range Protection Agreement.  Moreover, like Wells Fargo's purported "public representations," the provision does not indicate that Wells Fargo will pay the fee, including when a closing delay is caused by an appraiser, as Plaintiff alleges.  *See id*. ¶¶ 47, 107.  Accordingly, the Price Range Protection Agreement cannot support Plaintiff's UCL claim.

In *Vega v. Ocwen Fin. Corp.*, No. 2:14-cv-04408-ODW(PLAx), 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015), the court rejected a similar theory.  There, the plaintiff alleged that her monthly mortgage loan billing statements were fraudulent and violated the UCL because they did not disclose that some of the fees charged were "unnecessary and inappropriate."  *Id*. at *1.  The court found this theory "illogical," reasoning that [t]he failure to concede liability in a billing statement does not then create additional causes of action. . . .  [That conduct] . . . does not arise to the level of fraud or deception."  *Id*. at *6-7.  Here, too, Plaintiff claims that Wells Fargo should have disclosed that it would "wrongfully" charge borrowers rate lock extension fees.  *See, e.g*., Am. Compl. ¶ 117.  *Vega* demonstrates why that type of allegation does not sufficiently allege a duty to disclose, and why Plaintiff's UCL claim cannot proceed.  For all these reasons, Plaintiff's UCL claim should be dismissed.

## C.    Nevada's DTPA Does Not Apply to Real Estate Lending Transactions.

Like his California consumer fraud claim under the UCL, Plaintiff's Nevada consumer fraud claim under the DTPA suffers a fatal flaw—the DTPA does not apply to real estate loan transactions.  *See Reyes v. BAC Home Loans Serv'g, LP*, 2:11-cv-01367-KJD, 2012 WL 2367803, at *2 (D. Nev. June 21, 2012) ("It has been established that [the DTPA] does not apply to real estate

1    loan transactions. . . .  Plaintiff's claim is based in a real estate transaction therefore, these statutes do

2    not provide an avenue for relief."); *Bartello v. CitiMortgage, Inc.*, 2:13-cv-01891-GMN-VC, 2014

3    WL 1514174, at *7 (D. Nev. Apr. 16, 2014) (finding that "no legal authority supports a finding that

4    Nevada's Deceptive Trade Practices Act applies to real property transactions, as opposed to the sale

5    of goods and services"); *Morris v. Green Tree Servicing, LLC*, No. 2:14-cv-01998-GMN-CWH,

6    2015 WL 4113212, at *15 (D. Nev. July 8, 2015) ("Courts in this jurisdiction have routinely held

7    that the Nevada Deceptive Trade Practices Act does not apply to mortgage transactions and real

8    estate, but only to transactions of goods and services.") (collecting cases); *Alexander v. Aurora Loan

9    Servs.*, No. 2:09-cv-1790-KJD-LRL, 2010 WL 2773796, at *2 (D. Nev. July 8, 2010) ("Plaintiff's

10   claim deals with the sale or lease of real property, not goods or services; therefore [the DTPA] does

11   not provide an avenue for relief to [p]laintiff.").

12        The Ninth Circuit Court of Appeals agrees.  In *Dowers v. Nationstar Mortg., LLC*, 852 F.3d

13   964, 972 (9th Cir. 2017), decided recently, the court explained:

14       While the Supreme Court of Nevada has not settled this issue, we agree with the
         district court in predicting that the Supreme Court of Nevada would hold that real
15       estate loans do not fall within the DTPA.  The DTPA governs transactions relating
         to "goods and services," *see* Nev. Rev. Stat. §§ 598.0915–598.0925, 598.0934, and
16       a real estate loan is neither a good nor a service within the meaning of this statute.

17   *Id.*[8]

18        Here, there is no dispute that Plaintiff's claims arise from a real estate loan transaction,

19   because the crux of his claims is that Wells Fargo improperly charged home loan borrowers

20   "unwarranted mortgage interest rate lock extension fees" in connection with their mortgage

21   transactions pursuant to an undisclosed "scheme."  Am. Compl. ¶ 5; *see also id*. ¶¶ 1-3; 20-51, 82,

---

[8] The Nevada Supreme Court has applied the DTPA to a real estate transaction only once—
providing no analysis and relegating the issue to a footnote.  *See Betsinger v. D.R. Horton, Inc.*, 232
P.3d 433, 436 (Nev. 2010).  There, the plaintiff negotiated to buy a home from the defendant, a
developer.  *Id.* at 434.  As part of the incentive to buy, the developer's financing division offered
plaintiff a 4.6% interest rate on his mortgage.  *Id*. Then, after the plaintiff paid a deposit and signed
the contract, the financing division raised the interest rate by almost two points.  *Id*.  In response, the
plaintiff canceled the purchase contract, but the defendants failed to return his deposit.  *Id*.  The
Nevada Supreme Court upheld the jury's finding that the developer violated the DTPA.  *Id*. at 436.
This case is readily distinguishable from *Betsinger*, and in any event, decisions since *Betsinger* have
consistently refused to apply the DTPA to real estate transactions.  *See, e.g.*, *Reyes*, 2012 WL
2367803, at *2; *Bartello*, 2014 WL 1514174, at *7; *Morris*, 2015 WL 4113212, at *15.

85, 91.  Accordingly, Plaintiff's DTPA claim should be dismissed as a matter of law.  And, because amendment cannot save his claim, it should be dismissed with prejudice.  *Toromanova v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00328-GMN, 2013 WL 1314974, at *5 (D. Nev. Mar. 28, 2013) (dismissing plaintiff's DTPA claim with prejudice because it was based on a real estate transaction and any amendment would be futile).

### D.      Plaintiff's RESPA Claim Should Be Dismissed.

In his First Cause of Action, Plaintiff attempts to allege a claim under § 2607(b) of RESPA, which provides: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).  As the Supreme Court has made clear, "[i]n order to establish a violation of § 2607(b), a plaintiff must demonstrate that a charge for settlement services was divided between two or more persons."  *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 638 (2012).  Plaintiff seeks to satisfy this requirement by alleging that (1) WFHM—which is not a separate legal entity but instead is a division of WFBNA—charged him a rate lock extension fee for a delay it caused, and then "split" or "shared" that fee, in some unspecified manner, with WFBNA;[9] (2) WFBNA "share[d]" those fees, again in some unspecified manner, with its "parent company," Wells Fargo & Company (a financial holding company that does not conduct banking operations) (*see* RJN ¶ 1; Am. Compl. ¶ 16); and (3) Wells Fargo & Company (again, a financial holding company), violated this provision by receiving those fees, again in some unspecified manner.  Am. Compl. ¶ 70.  In short, Plaintiff claims that some unidentified portion of his rate lock extension fee made its way to a financial holding company in some unspecified manner.  Plaintiff's RESPA claim thus hinges on WFBNA and its "parent company," Wells Fargo & Company, constituting "two or more persons" under RESPA.  The Court should hold that they do not.

RESPA defines "person" as "individuals, corporations, associations, partnerships, and

---

[9] This allegation is implausible on its face.  As Plaintiff acknowledges, WFHM is a ***division*** of WFBNA—it is not a legally separate entity.  Am. Compl., ¶¶ 17, 70.  It is axiomatic that a company cannot "share" or "split" fees with itself.

trusts." 12 U.S.C. § 2602(5).  It does not address whether a parent company and its subsidiary are

separate "persons" under the Act, but several Circuit Courts of Appeal have held that § 2607(b)

applies only when the fees at issue are split with a "third party."  *See, e.g.*, *Haug v. Bank of Am.,*

*N.A.*, 317 F.3d 832, 836 (8th Cir. 2003) ("We therefore hold that [§ 2607](b) prohibits only

transactions in which the defendant shares a 'portion, split, or percentage of any charge' with a third

party."); *Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261, 265 (4th Cir. 2002) ("[§ 2607(b)] only

prohibits overcharges when a 'portion' or 'percentage' of the overcharge is kicked back to or 'split'

with a third party"); *Echevarria v. Chi. Title and Trust Co.*, 256 F.3d 623, 627 (7th Cir. 2001)

("Because plaintiffs fail to accuse a third party of accepting unearned fees, [this] compels the

dismissal of their RESPA claims.").  Moreover, although no court has squarely addressed whether a

parent company is a "third party" for purposes of § 2607(b), the question has been answered in a

variety of analogous contexts, and the consistent answer has been "no."  The same interpretation

should apply here.

First, it has long been the case that a parent and its wholly-owned subsidiary must be viewed

as a "single enterprise" for purposes of Section 1 of the Sherman Act, and thus are deemed

"incapable of conspiring with each other" under that Act.  *See Copperweld Corp. v. Indep. Tube*

*Corp.*, 467 U.S. 752, 752-53 (1984).  Similarly, a subsidiary is not sufficiently distinct from its

parent corporation to constitute a separate "person" under the federal RICO statute.  *See, e.g.*,

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2nd Cir. 1996) ("It would be inconsistent for a

RICO person, acting within the scope of its authority, to be subject to liability simply because it is

separately incorporated, whereas otherwise it would not be held liable"), *vacated on other grounds*,

525 U.S. 128 (1998).  And a subsidiary is not a "third party" to the economic relationship with its

parent for purposes of an intentional inference with economic relations claim.  *See Sizer v. New*

*England Life Ins. Co.*, 871 F. Supp. 2d 1071, 1083 (D. Or. 2012).[10]

---

[10] Defendants are aware of *Edwards v. First Am. Corp.*, 798 F.3d 1172 (9th Cir. 2015), which
addressed whether class certification was appropriate in a RESPA § 2607(a) case alleging that the
defendant engaged in a nationwide scheme in which it purchased minority interests in title agencies
in exchange for those agencies' agreements to refer future title insurance business to the defendant.
On appeal, the defendant argued that individualized issues predominated, in part because some

1    The Court should adopt this same line of reasoning here, and find that Wells Fargo &

2    Company, which is a financial holding company chartered under the National Bank Act, is not a

3    "third party," and it and its subsidiary, WFBNA, are not separate "persons," for purposes of

4    § 2607(b).  Indeed, adopting Plaintiff's theory would allow a plaintiff to sue a parent company

5    anytime he brings a § 2607(b) claim without anything more than an allegation of a corporate

6    relationship.  Given that RESPA addresses wrongful fee-splitting with third parties, its application to

7    a parent as a "third party" makes no practical or legal sense.  Plaintiff's RESPA claim should be

8    dismissed.

9       **E.    Plaintiff's TILA Claim Finds No Support in the Statute Itself.**

10   Plaintiff's novel theory under TILA—that Wells Fargo failed to disclose an underlying

11   business practice—finds no support in the plain language of the statute.  To support this claim,

12   Plaintiff relies on 15 U.S.C. § 1638(a), which provides, in pertinent part: "Required disclosures by

13   creditor.  For each consumer credit transaction other than under an open end credit plan, the creditor

14   shall disclose" (1) "the aggregate **amount** of fees paid to the mortgage originator in connection with

15   the loan, the **amount** of such fees paid directly by the consumer, and any additional **amount** received

16   by the originator from the creditor," and (2) "the 'finance charge,' **not itemized**, using that term."  15

17   U.S.C. §§ 1638(a)(3), (18) (emphasis added).[11]  Plaintiff does not allege that Wells Fargo failed to

18   agencies were majority-owned by the defendant, while others were not, and with respect to the
19   majority-owned agencies, the defendant could not "refer business to itself." *Id*. at 1185.  The Ninth
     Circuit, without any analysis, disagreed, and found that "[n]o separate inquiries are necessary merely
20   because [defendant] is the majority owner of certain captive title agencies." *Id*.  Because *Edwards*
     addressed whether class certification was appropriate under Rule 23—not the merits of the plaintiffs'
21   claims—it is not applicable or binding here.

22   [11] Section 1638(a) does not, as Plaintiff claims, require a creditor to provide "a good faith estimate of
     the costs of closing a residential mortgage loan." Am. Compl. ¶ 75.  That requirement is found in
23   RESPA, 12 U.S.C. § 2604(c) and its implementing regulations, Regulation X, 12 C.F.R. § 1024 *et
     seq*.  Under RESPA, a lender is required to provide the borrower with a "good faith estimate," which
24   is defined as "an estimate of settlement charges a borrower is likely to incur, **as a dollar amount**,
     and related loan information . . . as provided on the form prescribed in § 1024.7 and prepared in
25   accordance with the Instructions in Appendix C to this part." 12 C.F.R. § 1024.2(b) (emphasis
     added).  Plaintiff does not allege that Wells Fargo failed to disclose his rate lock extension fee "as a
26   dollar amount."  Nor could he.  Plaintiff admits throughout his Amended Complaint that Wells
     Fargo disclosed the dollar amount of his rate lock extension fee. Am. Compl. ¶¶ 50, 120.  Plaintiff
27   also does not allege that Wells Fargo did not disclose his settlement charges "as provided on the
     form prescribed in § 1024.7 and prepared in accordance with the Instructions in Appendix C to this
28

1   disclose the amount of his rate lock extension fee or the "finance charge, not itemized."  Instead, he

2   claims that because Wells Fargo did not disclose its underlying "system" or "scheme" to "charge

3   borrowers finance charges/fees to extend the rate lock period in cases of bank-caused delay," Wells

4   Fargo's disclosures were not "meaningful or adequate."  Am. Compl. ¶¶ 77-78.

5          TILA does not contemplate, much less require, the type of disclosure Plaintiff advocates.  In

6   order to assist lenders with their TILA compliance, the Consumer Financial Protection Bureau

7   ("CFPB") "publish[es] a single, integrated disclosure for mortgage loan transactions . . . which

8   includes the disclosure requirements of TILA."  15 U.S.C. § 1604(b).  "A creditor or lessor *shall be*

9   *deemed to be in compliance with the disclosure provisions [of TILA]* with respect to other than

10  numerical disclosures[12] *if the creditor or lessor … uses any appropriate model form or clause as*

11  *published by the [CFPB]*."  *Id*. (emphasis added).  Plaintiff does not allege that Wells Fargo did not

12  use a CFPB-published form, and, more importantly, the CFPB-published forms do not require any

13  "business practice" disclosure such as the one Plaintiff seeks here.  *See* 12 C.F.R. Pt. 226, App. H.

14         Indeed, as Plaintiff acknowledges, TILA "require[s] creditors to clearly and conspicuously

15  disclose to borrowers the accurate and full terms of the *legal relationship* between creditors and

16  consumer borrowers."  Am. Compl. ¶ 74 (emphasis added).  And, the "legal relationship" between

17  Plaintiff and Wells Fargo required him to pay a $287.50 fee to extend his rate lock period.  Because

18  Plaintiff admits that Wells Fargo disclosed this part of the "legal relationship" to him, his TILA

19  claim fails.  As the Southern District of New York has so aptly explained, courts are

20          loathe to import a requirement into a [statute] that was not placed there by Congress.
21      If Congress believes the statut[e] . . . does not adequately protect a consumer's interest
        [ ], it is for Congress to act; it is not for the judiciary to add requirements that do not
22      exist in the statute.

23  *Gross v. Wash. Mut., Inc.*, No. 06 Civ. 4340 (RLC), 2007 WL 1404435, at \*4 (S.D.N.Y. May 10,

24  part."  12 C.F.R. § 1024.2(b).  Accordingly, the Court should dismiss the "good faith estimate"
    portion of Plaintiff's Second Cause of Action.
25  [12] This reference to "numerical disclosures" serves as a reminder that use of a CFPB-published form
    will not protect a lender whose numerical disclosures are inaccurate, for example, by miscalculating
26  the finance charge or annual percentage rate, or by incorrectly listing the dollar amount of a fee.  *See*
    15 U.S.C. § 1601 (explaining that the purpose of TILA is to accurately disclose the *cost* of credit).
27  Plaintiff does not, and indeed, cannot, allege that Wells Fargo incorrectly disclosed the dollar
28  amount—the "numerical disclosure"—of his rate lock fee.

3:17-cv-04995-MMC

1  2007) (rejecting plaintiff's attempt to expand the definition of "firm offer of credit" under the Fair

2  Credit Reporting Act).  The Court similarly should reject Plaintiff's self-serving attempt to add

3  disclosure requirements to TILA and dismiss his Second Cause of Action.

4  **F.   Plaintiff's Conversion Claim Fails to State a Claim for Relief.**

5  Plaintiff's conversion claim in his Fifth Cause of Action also fails as a matter of law and

6  should be dismissed.  In California, "[a] cause of action for conversion requires allegations of

7  plaintiff's ownership or right to possession of property; defendant's wrongful act toward or

8  disposition of the property, interfering with plaintiff's possession; and damage to plaintiff." *McKell*

9  *v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006).  "Money cannot be the subject of a cause

10  of action for conversion unless there is a specific, identifiable sum involved, such as where an agent

11  accepts a sum of money to be paid to another and fails to make the payment." *Id.*  Moreover, an

12  alleged overcharge cannot be the subject of a conversion claim. *See id.* at 1491-92 ("Plaintiffs cite

13  no authority for the proposition that a cause of action for conversion may be based on an overcharge.

14  Consequently, they have failed to demonstrate that they have stated a cause of action for

15  conversion.").  Similarly, voluntary payments cannot be the basis for a conversion claim. *See*

16  *Darrin v. Bank of Am., N.A.*, No. 2:12-CV-00228-MCE, 2013 WL 877087, at *7 (E.D. Cal. Mar. 7,

17  2013) ("Plaintiff has failed to establish that BoA 'wrongfully' dispossessed Plaintiff of $1,617.04.

18  Plaintiff's SAC describes Plaintiff voluntarily paying BoA the sum.").  Finally, without allegations

19  that a trust or agency relationship exists where a defendant holds money on behalf of the plaintiff for

20  payment to a third party, a conversion claim for money must fail. *See Jefferson v. Chase Home Fin.*

21  *LLC*, No. C06 6510 TEH, 2007 WL 1302984, at *5 (N.D. Cal. May 3, 2007).[13]

22  Here, Plaintiff alleges that Wells Fargo charged him an extra $287.50 in closing costs that

23  should have been paid by Wells Fargo instead. *See* Am. Compl. ¶¶ 49-50.  Plaintiff disagrees that he

24  should have had to pay the extra closing costs, but he paid them in order to close the purchase. *See*

25  *id.*  Plaintiff "fails to allege that he had any ownership rights to the funds at issue once he transmitted

26

27  _____

[13] In Nevada, conversion requires "a volitional act beyond a mere omission," which Plaintiff has not alleged here. *Rupracht v. Union Sec. Ins. Co.*, No. 3:07-CV-00231-RCJ, 2011 WL 6109574, at *6

28  (D. Nev. Dec. 7, 2011).

1   those funds to" Wells Fargo "nor does [he] allege that an agency or trust relationship existed

2   between" him and Wells Fargo. *Jefferson*, 2007 WL 1302984, at *5. Plaintiff could not "at any

3   point have demanded that [Wells Fargo] return his [payment] to him" in the way he could have done

4   so with an agent holding the payment in trust. *Id*. Accordingly, Plaintiff alleges—at best—an

5   overcharge on his closing costs, which is not actionable as a conversion claim. For these reasons,

6   the Court should dismiss Plaintiff's conversion claim.

7       **G.      Plaintiff's Claim For Breach of the Implied Covenant of Good Faith and Fair**

8                 **Dealing Fails as a Matter of Law.**

9           In his Sixth Cause of Action, Plaintiff purports to bring a claim for breach of the implied

10  covenant of good faith and fair dealing. "The prerequisite for any action for breach of the implied

11  covenant of good faith and fair dealing is the existence of a contractual relationship between the

12  parties, since the covenant is an implied term in the contract." *Landucci v. State Farm Ins. Co*., 65

13  F. Supp. 3d 694, 715 (N.D. Cal. 2014) (quoting *Smith v. City and Cty. of S.F*., 225 Cal. App. 3d 38,

14  49 (1990)); *see also Finnegan v. Washoe Cty*., No. 3:17-cv-00002-MMD-WGC, 2017 WL 3299040,

15  at *5 (D. Nev. Aug. 2, 2017) ("In order to state a claim for breach of the implied covenant of good

16  faith and fair dealing [under Nevada law], a plaintiff must allege the existence of a contract and facts

17  demonstrating that the defendant performed the contract in a manner that is unfaithful to the purpose

18  of the contract or the justified expectations of the plaintiff." (internal citations omitted)). Moreover,

19  the plaintiff must identify the specific contractual obligation from which the implied covenant of

20  good faith and fair dealing allegedly arose. *See Compton v. Midland Mortg*., No. CV 16-00817-

21  RGK (JCx), 2016 WL 7479418, at *6 (C.D. Cal. Apr. 19, 2016); *see also Synopsys, Inc. v.

22  ATopTech, Inc*., No. C 13-2965 MMC, 2015 WL 106340, at *3-4 (N.D. Cal. Jan. 7, 2015) (Chesney,

23  J.), *order vacated on other grounds on reconsideration*, No. C 13-2965 MMC, 2015 WL 926489

24  (N.D. Cal. Feb. 19, 2015) (internal citation omitted); *Hester v. Vision Airlines, Inc*., No. 2:09-cv-

25  00117-RLH-RJJ, 2009 WL 4893185, at *9 (D. Nev. Dec. 16, 2009).

26          Here, the contractual provision Plaintiff identifies, which is contained in a Price Range

27  Protection Agreement, does not support his claim for breach of the duty of good faith and fair

28

1    dealing.  *See* Am. Compl. ¶ 106.[14]  The provision reads in its entirety:

2        This pricing is valid until the Expiration Date of the Rate Lock shown above.  If loan
         does not close and funds disbursed on or before the expiration date, your loan will be
3        re-priced and this may result in pricing increases.  However, at the option of Wells
         Fargo Bank, N.A., you may be permitted to keep your rate the same by paying an
4        extension fee to extend the rate lock.

5    *Id.* ¶ 107.  As is plain on the face of this language, this provision concerns the initial rate lock period

6    for the loan.  *See id.*  If the loan does not close by the Expiration Date, then the agreement refers to

7    the possibility of keeping the interest rate ("at the option of Wells Fargo") if the borrower pays a fee

8    to extend the lock period.  *See id.*  The provision is silent on whether Wells Fargo will pay the fee,

9    including when a closing delay is caused by an appraiser, as Plaintiff alleges.  *See id.* ¶¶ 47, 107.

10   Plaintiff does not—and cannot—allege that this provision supports a duty of good faith and fair

11   dealing because it does not even relate to the conduct of which he complains.  *See Linglong*

12   *Americas Inc. v. Get it on Wheels, Inc.*, No. 2:17-01378 WBS GGH, 2018 WL 288014, at *3 (E.D.

13   Cal. Jan. 4, 2018) ("To assert a []claim for a breach of the implied covenant of good faith and fair

14   dealing, defendant must establish that the breach of the implied covenant arises from the

15   expectations of the contractual agreement."); *Racine & Laramie, Ltd. v. Dep't of Parks &*

16   *Recreation*, 11 Cal. App. 4th 1026, 1031, (1992) ("The implied covenant of good faith and fair

17   dealing rests upon the existence of some specific contractual obligation." (internal citation omitted)).

18   It does not, for example, indicate a promise by Wells Fargo to pay to extend Plaintiff's rate lock or

19   describe any circumstances under which Wells Fargo would pay the fee instead of Plaintiff.  Thus,

20   Plaintiff's amended allegations continue to be insufficient to state a claim for breach of the implied

21   covenant of good faith and fair dealing, and this claim should be dismissed.

22        **H.    Plaintiff's Fraudulent Concealment Claim Should Be Dismissed.**

23        In his Seventh Cause of Action, Plaintiff purports to bring a fraudulent concealment claim,

24   based upon Wells Fargo's alleged failure to disclose its purported "scheme" and its purportedly

25   misleading "website," "Lock-In Agreement," and "Closing Disclosure."  *See* Am. Compl. ¶¶ 82,

26   118-122.  As explained below, Plaintiff's amendments do not save this claim, and it must be

27

28   _____
     [14] Plaintiff calls this agreement a "Lock-In Agreement."  *See* Am. Compl. ¶¶ 106, 107, 109, 119.

                                                    21

1    dismissed.

2        **1.    There is No Duty To Disclose a Purported "Scheme."**

3        As Wells Fargo demonstrated in its motion to dismiss Plaintiff's original Complaint, a

4    purported failure to disclose a fraudulent "scheme" is not a legally viable theory.  *See, e.g.*, *LiMandri*

5    *v. Judkins*, 52 Cal. App. 4th 326, 337-38 & n.5 (1997); *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460,

6    467 (9th Cir. 1997); *Bank of Am. v. Super. Ct.*, 198 Cal. App. 4th 862, 872-73 (2011).  In response,

7    Plaintiff amended his allegations by deleting several references to the word "scheme" and replacing

8    it with a description of the "scheme" he alleges.  *See* Am. Compl. ¶¶ 84, 115.  However, to the

9    extent Plaintiff still relies on the "failure to disclose a scheme" theory, it cannot support his

10   fraudulent concealment claim.

11       On this issue, the California Court of Appeal's decision in *LiMandri v. Judkins* is instructive.

12   There, the plaintiff alleged fraudulent concealment based on the defendant's failure to disclose that

13   he intended to commit an intentional tort.  The trial court sustained the demurrer, and the Court of

14   Appeal affirmed.  *LiMandri*, 52 Cal. App. 4th at 250.  As the court explained:

15       > [Plaintiff's] theory, in essence, is that [the defendant] owed him a duty to disclose his
16       > intention to commit an intentional tort.  Although inferentially, everyone has a duty to
         > refrain from committing intentionally tortious conduct against another, it does not
17       > follow that one who intends to commit a tort owes a duty to disclose that intention to
         > his or her intended victim. ***The general duty is not to warn of the intent to commit***
18       > ***wrongful acts, but to refrain from committing them.  We are aware of no authority***
         > ***supporting the imposition of additional liability on an intentional tortfeasor for***
19       > ***failing to disclose his or her tortious intent before committing a tort***.

20   *Id*. at 338 (internal quotation marks and citations omitted and emphasis added).  In 2011, the

21   California Court of Appeal confirmed that *LiMandri* remains the law in California when it

22   rejected—again on demurrer—the theory that a mortgage lender has a duty to disclose to its

23   borrowers its alleged intent to defraud investors.  *See Bank of Am. Corp. v. Sup. Ct.*, 198 Cal. App.

24   4th at 872-73.  As the court explained, "while [the defendant] had a duty to refrain from committing

25   fraud, it had no independent duty to disclose to its borrowers its alleged intent to defraud its

26   investors ...."  *Id.*; *see also Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d at 467-68 (rejecting fraud

27   claim based on plaintiff's allegation that the defendant had a duty to disclose that he was illegally

28

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

3:17-cv-04995-MMC

recording and taping his conversation with her, because "even if the audiotaping and videotaping were wrongful under tort principles or a statute, [defendant] is not liable for failing to disclose its intention to commit those wrongful acts"); *Porter v. Bank of Am., N.A.*, No. 1:14-cv-00431-LJO-SAB, 2014 WL 1819396, at *4 (E.D. Cal. May 7, 2014) (expressly relying on *Bank of America* and holding that "Defendants do not owe Plaintiffs a duty to disclose facts pertaining to their alleged mortgage scheme"); *Attygala v. Wells Fargo Bank, N.A.*, No. CV 12-10075 MMM (PLAx), 2013 WL 12129400, at *20 (C.D. Cal. May 5, 2013) (dismissing negligence claim based on an alleged failure to disclose a scheme, explaining that "plaintiffs have failed adequately to plead that Wells Fargo had a legal duty to disclose to plaintiffs that the purported securitization scheme increased their risk of default"); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 515 (S.D.N.Y. 2011) (noting that it is "rather circular to say that . . . Defendants 'committed fraud by concealing their intent to commit fraud'").[15]

The same defects underlying the concealment claims in *LiMandri* and *Bank of America* exist here.  Although Plaintiff attempted to "plead out" of this theory by deleting a few references to the purported "scheme" from his Amended Complaint, he nonetheless still alleges that Wells Fargo failed to disclose its intent to commit a tort.  *See, e.g.*, Am. Compl. ¶¶ 82, 84, 91 ("Wells Fargo engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL by … failing to disclose the rate lock fee scheme in its advertising of rate lock services," "Had they known the truth about that scheme, Plaintiff and the Class would have taken steps to prevent being charged Rate Lock Extension Fees," "Defendants' scheme and concealment of that scheme was material to Plaintiff and the Class").  Under *LiMandri* and *Bank of America*, however, such allegations are fatally flawed, and Plaintiff's fraudulent concealment claim cannot proceed on this theory.[16]

---

[15] Defendants have not located any Nevada cases addressing this issue.  However, because the elements of a concealment claim under California and Nevada law are the same, the outcome should be the same regardless of which state's law applies.  *See Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2013 WL 3157918, at *5 (N.D. Cal. June 20, 2013) (discussing elements of fraudulent concealment under California law); *Villa v. First Guar. Fin. Corp.*, No. 2:09-cv-02161-GMN-RJJ, 2010 WL 2953954, at *4 (D. Nev. July 23, 2010) (discussing the elements of fraudulent concealment under Nevada law).

[16] Wells Fargo submits that, to the extent his UCL claim relies on this "failure to disclose a scheme" theory, *LiMandri* and *Bank of America* foreclose that reliance as well.  First, as set forth above, the

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

3:17-cv-04995-MMC

1

### 2. Plaintiff Does Not Allege Reliance.

2      According to Plaintiff, "Wells Fargo Home Mortgage's website," the "Lock-In Agreement,"

3   and the "Closing Disclosure" are misleading because they do not "discuss that Bank-caused delays

4   may result in borrowers paying such fees at the end of the rate lock period." *Id.* ¶¶ 118-121.  Not

5   only did Wells Fargo not have a duty to disclose this information (*see* Sections III.B.3 and III.H.1,

6   *supra*), but Plaintiff does not allege reliance.  Indeed, Plaintiff does not allege that (1) he ever visited

7   Wells Fargo's website, much less that he read or relied on the referenced statements; (2) he ever read

8   the "Lock-In Agreement" or took any action in response to it; or (3) the Closing Disclosure—which

9   accurately disclosed that he was paying the extension fee—led him to take or not take any action.  In

10  fact, Plaintiff acknowledges that he disagreed with Wells Fargo's decision that he should pay the

11  extension fee, but that he decided to extend his lock period and pay the fee anyway.  Am. Compl.

12  ¶¶ 50-51.  These pleading deficiencies require dismissal of his fraudulent concealment claims under

13  Rule 9(b).  *See Kearns*, 567 F.3d at 1126 (affirming dismissal of fraud claims under Rule 9(b) when

14  the complaint did not "specify when [the plaintiff] was exposed to the [challenged advertisements]

15  or which ones he found material," and "failed to specify which sales material he relied upon in

16  making his decision to buy [the challenged product]"); *Gomez v. Carmax Auto Superstores Cal.,*

17  *LLC*, No. 2:14-cv-09019-CAS (PLAx), 2015 WL 350219, at *6-9 (C.D. Cal. Jan. 22, 2015)

18  (requiring dismissal of plaintiff's fraud claims under Rule 9(b) due to her failure to "plead with

19  particularity when she saw or heard the [challenged] advertisements").

20

### 3. The Economic Loss Rule Bars Plaintiff's Fraud Claim.

21      Finally, Plaintiff's fraud claim is barred the economic loss rule, which bars purely economic

22  damages with no accompanying physical or property damage.  Finally, the economic loss rule bars

23  _____

24  UCL requires that the defendant have a duty to disclose the allegedly withheld information, and
    under *LiMandri* and *Bank of America*, there is no duty to disclose an alleged scheme.  Second,

25  *LiMandri* and *Bank of America*'s reasoning has been applied outside the fraudulent concealment
    context, including to a negligence claim.  *See Attygala*, 2013 WL 12129400, at *20.  Finally,

26  although the trial court overruled the demurrer to the UCL claim in *Bank of America*, it only certified
    its ruling on the fraudulent concealment claim for writ review and accordingly, the fraudulent

27  concealment claim was the only claim the California Court of Appeal considered.  Accordingly,
    Wells Fargo submits that nothing in *Bank of America* should be read to prohibit application of its

28  reasoning to UCL and other causes of action.

1  Plaintiff's fraud claims, since he seeks purely economic damages with no accompanying physical or

2  property damage. *See, e.g.*, *Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*, 73 F. Supp. 3d 1206,

3  1221 (N.D. Cal. 2014). Although there is an exception to the rule in certain fraud cases, that

4  exception cannot apply here.

5      The "independent duty" exception to the economic loss rule applies only when the duty

6  giving rise to the tort liability is completely independent of a contract, and does not seek to vindicate

7  contractual, benefit-of-the-bargain, damages. *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.

8  4th 979, 990 (2004); *Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, No. 12-1924 SC, 2013 WL

9  5402072, at *3 (N.D. Cal. Sept. 26, 2013). But Plaintiff's fraudulent concealment claim is based on

10  the same alleged conduct underlying his breach of the implied covenant claim—that Wells Fargo did

11  not advise him that it would charge a fee to extend the lock period when Wells Fargo caused the

12  closing delay. Am. Compl. ¶¶ 108, 115. And it seeks the same damages. *Id.* ¶¶ 112, 124.

13  Accordingly, the economic loss rule bars Plaintiff's fraudulent concealment claim. *See Wine Bottle*

14  *Recycling*, 2013 WL 5402072, at *3; *see also WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-

15  5304 SC, 2014 WL 2621465, at *6 (N.D. Cal. June 12, 2014) ("The Court finds that Plaintiff's

16  fraudulent concealment claims are barred by the economic loss rule. Plaintiff's fraud claim . . . is

17  exactly what Plaintiff pled as to its breach of contract claims, but with the addition of fraudulent

18  intent and concealment.").

## CONCLUSION

20      For the foregoing reasons, Defendants request that the Court dismiss Plaintiff's Amended

21  Complaint in its entirety.

22  Dated: February 1, 2018                    WINSTON & STRAWN LLP

24                                             By:  */s/ Amanda L. Groves*
                                                   Amanda L. Groves

25                                             Attorneys for Defendants
26                                             WELLS FARGO & COMPANY,
                                               WELLS FARGO BANK, N.A., and
27                                             WELLS FARGO HOME MORTGAGE, a
                                               division of Wells Fargo Bank, N.A.

28

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

3:17-cv-04995-MMC