Amanda L. Groves (SBN: 187216)
agroves@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA  94111-5802
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

Kobi K. Brinson (admitted *pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (admitted *pro hac vice*)
sknight@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:     (704) 350-7700
Facsimile:     (704) 350-7800

Attorneys for Defendants
WELLS FARGO & COMPANY,
WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| VICTOR MUNIZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY,<br>WELLS FARGO BANK, N.A., and<br>WELLS FARGO HOME MORTGAGE,<br><br>Defendants. | Case No. 3:17-cv-04995-MMC<br><br>**DEFENDANTS WELLS FARGO & COMPANY'S, WELLS FARGO BANK, N.A.'S AND WELLS FARGO HOME MORTGAGE'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: April 27, 2018<br>Time: 9:00 a.m.<br>Courtroom: 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ............................................................................................................ 1

    A.    Plaintiff's Amended UCL Claim Fails As a Matter of Law. ........................ 1

        1.    The California UCL Does Not Apply to This Nevada Plaintiff. .... 1

        2.    Plaintiff Has An Adequate Legal Remedy ...................................... 3

        3.    Plaintiff Has Not Adequately Alleged a UCL Claim ..................... 5

    B.    Nevada's DTPA Does Not Apply to Real Estate Lending Transactions. ..... 9

    C.    Plaintiff's RESPA Claim Should Be Dismissed. ........................................ 9

    D.    The Court Should Reject Plaintiff's Attempt to Rewrite TILA................. 11

    E.    Plaintiff's Conversion Claim Fails.............................................................. 11

    F.    Plaintiff's Implied Covenant Claim Fails. ................................................. 13

    G.    Plaintiff's Fraudulent Concealment Claim Fails........................................ 13

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Comcast Corp.*,
No. 16-cv-05969-VC, 2017 WL 3491973 (N.D. Cal. Aug. 1, 2017) ............................................4

*Altman v. PNC Mortg.*,
850 F. Supp. 2d 1057 (E.D. Cal. 2012).........................................................................................8

*Andujar v. Deutsche Bank Nat'l Trust Co.*,
No. 14-7836, 2015 WL 4094637 (D.N.J. July 7, 2015) ..............................................................10

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...........................................................................................6

*Baggett v. Hewlett-Packard Co.*,
582 F. Supp. 2d 1261 (C.D. Cal. 2007) ..........................................................................................7

*Bank of Am. Corp. v. Sup. Ct.*,
198 Cal. App. 4th 862 (2011) ........................................................................................................14

*Bank of N.Y. v. Fremont Gen. Corp.*,
523 F.3d 902 (9th Cir. 2008) .........................................................................................................12

*Bentham v. Bingham Law Grp.*,
No. 13cv1424-MMA (WVG), 2013 WL 12186171 (S.D. Cal. Nov. 15, 2013)..........................15

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ............................................................................................2

*Boulware v. Crossland Mortg. Corp.*,
291 F.3d 261 (4th Cir. 2002) .........................................................................................................11

*Bronson v. Johnson & Johnson, Inc.*,
No. C 12-04184 CRB, 2013 WL 5731817 (N.D. Cal. April 16, 2013) ..........................................7

*Cabrales v. Castle & Cook Mortg.*,
LLC, No. 1:14-cv-01138-MCE-JLT, 2015 WL 3731552 (E.D. Cal. June 12, 2015)...................4

*Cannon v. Wells Fargo Bank N.A.*,
917 F. Supp. 2d 1025 (N.D. Cal. 2013) ......................................................................................1, 3

*Colucci v. ZonePerfect Nutrition Co.*,
No. 12-2907, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012)...........................................................4

*Deteresa v. Am. Broad. Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) .........................................................................................................14

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ..........................................................................8, 9

*Dowers v. Nationstar Mortg., LLC*,
   852 F.3d 964 (9th Cir. 2017) ................................................................................................9

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
   No. 14-cv-04809-HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015).............................4

*Echevarria v. Chi. Title & Trust Co.*,
   256 F.3d 623 (7th Cir. 2001) .............................................................................................11

*Edwards v. First Am. Corp.*,
   798 F.3d 1172 (9th Cir. 2015) .....................................................................................10, 11

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ............................................................................2, 7

*Freeman v. Quicken Loans, Inc.*,
   566 U.S. 624 (2012).............................................................................................9, 10, 11

*Gomez v. Carmax Auto Superstores Cal., LLC*,
   No. 2:14-cv-09019-CAS, 2015 WL 350219 (C.D. Cal. Jan. 22, 2015)...............................7

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..............................................................................8

*Haug v. Bank of Am.*,
   317 F.3d 832 (8th Cir. 2003) .............................................................................................11

*Herron v. Best Buy Co., Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013)...........................................................................6, 7

*Levin v. Citibank, N.A.*,
   No. C-09-0350 MMC, 2009 WL 3008378 (N.D. Cal. Sept. 17, 2009) ...........................13

*Lewis v. Casey*,
   518 U.S. 343 (1996)...........................................................................................................1

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ............................................................................................14

*Lomeli v. Jackson Hewitt, Inc.*,
   No. 2:17-CV-02899-ODW, 2018 WL 1010268 (C.D. Cal. Feb. 20, 2018) ....................4

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ........................................................................................12

*Moss v. Infinity Life Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) ..............................................................................4

*Munning v. The Gap, Inc.*,
  238 F. Supp. 3d 1195 (N.D. Cal. 2017) ........................................................................4

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ..........................................................................5

*Perez v. Wells Fargo & Co.*,
  No. 17-cv-00454 MMC, 2017 WL 3314797 (N.D. Cal. Aug. 3, 2017) ...........................3

*Precht v. Kia Motors Am., Inc.*,
  No. SA CV 14-1148-DOC, 2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) ...................2

*Ramirez v. Ghilotti Bros. Inc.*,
  941 F. Supp. 2d 1197 (N.D. Cal. 2013) ........................................................................7

*Razuki v. Equity Residential Mgmt., LLC*,
  No. 15-CV-1057-BEN (JLB), 2016 WL 337758 (S.D. Cal. Jan. 26, 2016)...................12

*Rhynes v. Stryker Corp.*,
  No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011)......................................5

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) .................................................................................................15

*Robinson v. C.R. Bard, Inc.*,
  No. 16-CV-00942-JST, 2016 WL 3361825 (N.D. Cal. June 17, 2016) ...........................5

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ........................................................................6

*In re: Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television
  Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010)..........................................................................6

*Std. Furniture Mfg. Co. v. LF Prods. PTE. Ltd.*,
  No. SAVC16-02097-CJC(KESx), 2017 WL 3082221 (C.D. Cal. June 13, 2007).........15

*Strome v. DMBK Enters., Inc.*,
  No. 14-cv-02398-SI, 2014 WL 6485533 (N.D. Cal. Nov. 19, 2014) ...............................9

*Sutcliffe v. Wells Fargo Bank, N.A.*,
  283 F.R.D. 533 (N.D. Cal. 2012)...................................................................................2

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ...........................................................................2

*Util. Consumers' Action Network v. Sprint Sols., Inc.*,
  No. C07-CV-2231-W RJB, 2008 WL 1946859 (S.D. Cal. Apr. 25, 2008)...................12

*Vicuna v. Alexia Foods, Inc.*,
    No. C 11-6119 PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012)..................................................4

*Walters v. Target Corp.*,
    No. 3:16-CV-01678-L-MDD, 2017 WL 3721433 (S.D. Cal. Feb. 14, 2017) ...............................12

*Williamson v. Reinalt-Thomas Corp.*,
    No. 5:11-CV-03548-LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ...................................12

*Wilson v. Hewlett-Packard Co.*,
    No. C-09-2253 RMW, 2009 WL 3021240 (N.D. Cal. Sept. 17, 2009).........................................2

*Zapata Fonseca v. Goya Foods Inc.*,
    No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)..........................................4

**Statutes**

15 U.S.C. § 1604(b) ....................................................................................................................11

15 U.S.C. § 1638(a) ....................................................................................................................11

Nev. Rev. Stat. § 598.015(15)........................................................................................................9

Nev. Rev. Stat. § 598.0923(4)........................................................................................................9

1   **I.   <u>INTRODUCTION</u>**

2        Plaintiff's Opposition confirms that his complaint should be dismissed.  Plaintiff has doubled

3   down on his "failure to disclose a fraud" theory, arguing throughout the Opposition that Wells Fargo

4   did not disclose a purported scheme to wrongfully charge borrowers interest rate lock extension fees.

5   But California law is settled that even proven failure to disclose an intended tort is not fraud.

6   Regarding his other claims, Plaintiff resorts to colorful turns of phrase, irrelevant (and

7   impermissible) references to a newspaper article and other (dissimilar) lawsuits, and repeated

8   urgings for the Court to construe his claims "liberally" because they are "remedial" in nature.

9   Stripping away Plaintiff's hyperbole reveals one simple fact: His claims are all legally deficient, and

10  the Court should dismiss them with prejudice.

11  **II.   <u>ARGUMENT</u>**

12       **A.   Plaintiff's Amended UCL Claim Fails As a Matter of Law.**

13            **1.   The California UCL Does Not Apply to This Nevada Plaintiff.**

14       Plaintiff claims he can proceed under the UCL because Wells Fargo's conduct "emanated

15  from California and has also allegedly harmed thousands of other Californians."  Opp. at 3.  Of

16  course, what allegedly happened to other borrowers is not relevant, because Plaintiff must establish

17  his own standing, not that of unnamed class members.  *See Lewis v. Casey*, 518 U.S. 343, 357-58

18  (1996); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1055 (N.D. Cal. 2013) (that "some

19  of the class members will undoubtedly reside in California (*i.e.*, an injury would have taken place in

20  the state)" is insufficient to extend application of UCL to out-of-state plaintiff).  And while Plaintiff

21  is correct that the UCL can apply when the allegedly wrongful conduct occurred in California,

22  according to Plaintiff's own allegations, that is not what happened here.  Plaintiff admits he is a

23  Nevada resident, who obtained a mortgage loan from a South Dakota-based company (Wells Fargo

24  Bank, N.A.) in Nevada, to buy a house in Nevada, and that he was charged a rate lock extension fee

25  in Nevada.  FAC, ¶¶ 14, 45-46.

26       Plaintiff ignores his admissions, instead insisting that because Wells Fargo "does business"

27  in California, he, as a Nevada resident, can pursue California UCL claims.  Opp. at 3.  However, the

28  issue is not simply whether Wells Fargo does business in California, but whether Plaintiff himself

was harmed by the business Wells Fargo conducted in California.  *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 916-918 (C.D. Cal. 2011).

Plaintiff does not satisfy this test.  He relies on paragraphs 5, 27, and 32 of the complaint, but those paragraphs allege only that California borrowers wrongfully paid interest rate-lock extension fees—not that any alleged scheme "emanated from California."  Regarding the scheme's "emanation," the complaint alleges only the following: "On information and belief, Wells Fargo's systematic scheme to charge faultless borrowers mortgage interest rate lock fees emanated from [Wells Fargo & Co.'s] California headquarters and/or offices, has harmed a large but yet-to-be determined number of California borrowers, and has resulted in the dismissal of several California-based executives."[1]  That conclusory allegation fails, as is aptly demonstrated by the cases Plaintiff cites.  In those cases, the plaintiffs did not simply conclude, as Plaintiff does here, that a "scheme emanated from California," but instead alleged facts establishing that the putative conduct originated in California.[2]  *See Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014) (deceptive statements contained on California defendant's California-maintained website and phone application; payments processed on California servers); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 538-39, 548 (N.D. Cal. 2012) (letters from a California address instructed plaintiffs to make payments to Wells Fargo in California); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 923 n.1 (N.D. Cal. 2013) (Wells Fargo & Co. exercised complete control over WFBNA and dictated its policies and practices); *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANx), 2014 WL 10988343, at *5 (C.D. Cal. Dec. 29, 2014) (California defendant marketed the cars at issue, developed owner's manual and warranty booklets, and refused to pay for the subject repairs); *Wilson v. Hewlett-Packard Co.*, No. C-09-2253 RMW, 2009 WL 3021240, at *1-2 (N.D. Cal. Sept. 17, 2009) (identifying specific decisions made in California).

---

[1] Again, Plaintiff obtained a mortgage loan from a South Dakota-based company (Wells Fargo Bank, N.A.) in Nevada, to buy a house in Nevada, and was charged a rate lock extension fee in Nevada. FAC, ¶¶ 14, 45-46.  No defendant is alleged to have done anything to him in California.

[2] As set forth above, what allegedly happened to other borrowers is not relevant.  Nor is the alleged "firing of California-based executives."  Opp. at 4.  As set forth below, the "whistleblower" complaint upon which Plaintiff relies is specifically related to Los Angeles-based employees and customers, not some nationwide "scheme."

The allegations deemed sufficient in those cases are utterly absent here, and courts routinely find conclusory allegations insufficient for an out-of-state plaintiff to proceed under the UCL. *See, e.g.*, *Cannon*, 917 F. Supp. 2d at 1055-56 ("In the case at bar, there does not appear to be any dispute that Wells Fargo has its principal place of business in California. Accordingly, it is possible that the decision … emanated from California. The question, however, is whether it is plausible that Wells Fargo did so; without additional facts suggesting that Wells Fargo did make the decision from California … , the Court concludes it is not."); *Perez v. Wells Fargo & Co.*, No. 17-cv-00454 MMC, 2017 WL 3314797, at *7 (N.D. Cal. Aug. 3, 2017)[3] (dismissing Texas plaintiff's UCL claim against Wells Fargo, finding that he "interacted with Wells Fargo in Texas" and the complaint "includes no facts to support a finding that Wells Fargo's decision to deny [plaintiff] credit was in any manner connected to California"). Here, too, Plaintiff's single, conclusory allegation is not enough.

Plaintiff's remaining arguments distort his allegations and the record. His claim that Wells Fargo issued a "press release that the rate-lock fee practice (and Wells Fargo's response to it) emanated from California"[4] is simply not correct. The press release[5] says nothing of the sort. It announced a voluntary refund program for customers who believe they should not have paid extension fees due to Wells Fargo's finding that its internal policy was applied inconsistently at times. There is no mention of any "scheme," let alone the alleged "scheme's" geographic source. Similarly, the "whistleblower letter"[6] alleges conduct specifically related to Los Angeles-based employees and customers—not some nationwide "scheme" that extended to Nevada.[7] The Court should reject Plaintiff's distortions. The UCL does not apply to his claims.

### 2.    Plaintiff Has An Adequate Legal Remedy.

Plaintiff has an adequate legal remedy. His contrary arguments do not withstand scrutiny. First, because Plaintiff seeks monetary damages and injunctive relief for the same conduct, he "was

---

[3] Opp. at 4.
[4] Opp. at 14.
[5] Exhibit A to the FAC.
[6] Exhibit B to the FAC.
[7] In addition, the Los Angeles "whistleblower" is not a party to this lawsuit, thus, his allegations are not relevant for the same reasons other borrowers allegedly being harmed in California is not relevant.

1   required to allege facts suggesting that damages under [his other claims] would not provide adequate

2   relief." *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780,

3   at *8 (N.D. Cal. Aug. 19, 2015); *see also Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-

4   LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing plaintiff's UCL claim because

5   other claims sought money damages for the same conduct, and plaintiff did not allege an inadequate

6   remedy); *Moss v. Infinity Life Ins. Co.*, 197 F. Supp. 3d 1191, 1204 (N.D. Cal. 2016) (dismissing

7   UCL claim when plaintiff did not dispute that she had an adequate remedy at law through her

8   contract claim).  Plaintiff's complaint and Opposition are notably silent on this issue.

9        Nor does Plaintiff address any of Wells Fargo's cited opinions.  *See* Opp. at 10.  Instead,

10   Plaintiff cites cases that allowed the plaintiffs to seek equitable and legal relief at the pleading stage,

11   but those cases do not address or even mention the pertinent issue: whether a plaintiff can seek

12   equitable relief when he has an adequate remedy at law.  *See Adkins v. Comcast Corp.*, No. 16-cv-

13   05969-VC, 2017 WL 3491973 (N.D. Cal. Aug. 1, 2017) (never using the phrase "adequate remedy

14   at law"); *Cabrales v. Castle & Cook Mortg.*, LLC, No. 1:14-cv-01138-MCE-JLT, 2015 WL

15   3731552 (E.D. Cal. June 12, 2015) (same); *Lomeli v. Jackson Hewitt, Inc.*, No. 2:17-CV-02899-

16   ODW (KSx), 2018 WL 1010268 (C.D. Cal. Feb. 20, 2018) (same); *Colucci v. ZonePerfect Nutrition

17   Co.*, No. 12-2907, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) (same); *Vicuna v. Alexia Foods,

18   Inc.*, No. C 11-6119 PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) (same).  For that reason, the

19   Court should decline to follow them.[8]

20        Finally, the Court should reject Plaintiff's unsupported argument that "Wells Fargo cannot

21   both argue that Plaintiff has an adequate legal remedy and that he has no remedies at all."  Opp. at

22   11.  As demonstrated in the opening brief, it does not matter that Plaintiff ultimately may not

23   succeed at pleading his other claims for which he seeks monetary relief.  The inquiry is whether his

24

---

25   [8] Plaintiff admits he did not plead his UCL claim in the alternative, but argues that "this is a minor
issue that could easily be cured by amendment."  Opp. at 10 n.5.  But "pleading in the alternative" is

26   not the problem.  Because Plaintiff has an adequate remedy at law, no amendment can cure this
deficiency.  *See Munning v. The Gap, Inc.*, 238 F. Supp. 3d 1195, 1204 (N.D. Cal. 2017) (plaintiff

27   could not allege that he lacked an adequate legal remedy and "[b]ecause no amendment[s] can cure
this deficiency, the [UCL and FAL] claims are dismissed WITH PREJUDICE") (emphasis in

28   original).

1   other claims "*may* entitle [him] to an adequate remedy at law"—not whether those claims can

2   survive a motion to dismiss. *Robinson v. C.R. Bard, Inc.*, No. 16-CV-00942-JST, 2016 WL

3   3361825, at *3 n.3 (N.D. Cal. June 17, 2016) (emphasis in original); *see also Rhynes v. Stryker*

4   *Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Plaintiffs' argument

5   that they will have no adequate remedy at law if their other claims fail is unavailing.  Where the

6   claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is

7   unavailable.") (emphasis in original).  For all these reasons, the court should dismiss Plaintiff's UCL

8   claim with prejudice.

9                      **3.      Plaintiff Has Not Adequately Alleged a UCL Claim.**

10          The FAC alleges that Wells Fargo's purported conduct was "unlawful, fraudulent, and

11  unfair," without any distinction of which supposed conduct applies to which theories. *See* FAC,

12  ¶ 82.  Nonetheless, Wells Fargo addressed each allegation and demonstrated why it was deficient.  In

13  response, Plaintiff reiterates his "failure to disclose a scheme" theory, effectively concedes that he

14  has not alleged reliance, and ignores many of Wells Fargo's arguments.  The UCL claim should be

15  dismissed.

16                      **a.      Plaintiff's "Fraudulent" UCL Claim Fails.**

17          Plaintiff first argues that "what makes Wells Fargo's rate-lock related statements actionable

18  is that they share some information about rate-lock fees, but omit other information." Opp. at 8.[9]

19  But none of the four "rate-lock related statements"[10] he identifies says anything about Wells Fargo

20  _____

21  [9] Plaintiff's claim that Wells Fargo has "acknowledged" "perpetrating a nationwide fraud" is
    patently false (nor can it save his deficient complaint).  *See* Opp. at 22.  Wells Fargo's contract with

22  its borrowers provided notice that borrowers—not Wells Fargo—would incur extension fees if
    borrowers wanted to lock in their negotiated interest rates during the loan application process.

23  Although Wells Fargo sometimes made the fee if the delay was caused by Wells Fargo, this does not
    mean that its representations were false or that it deceived anyone.

24  [10] (1) Borrowers "can count on Wells Fargo, the #1 home lender," (2) a "description of Rate-Lock
    Extension Fees" on the "Wells Fargo Home Mortgage website," which explains what a rate lock is,

25  (3) the "Price Range Protection Agreement," which concerns the initial rate lock period for the loan,
    and provides that if the loan does not close by the Expiration Date, it is possible for the borrower to

26  keep his interest rate ("at the option of Wells Fargo") if the borrower pays a fee to extend the lock
    period, and (4) his Closing Disclosure, which lists the amount of the fee.  *See* FAC, ¶¶ 82, 106-08,

27  118-20, 121.  Regarding the first statement, Plaintiff does not (and could not seriously) dispute that it
    is puffery that cannot form the basis of a UCL claim as a matter of law.  *See, e.g., Oestreicher v.*

28

1   paying the fee under any circumstances (including when a closing delay is caused by an appraiser, as

2   Plaintiff alleges).  *See* Opp. at 8-9, 20.  Although "omissions can form the basis of a … UCL claim,"

3   the "omission must be contrary to a representation actually made by the defendant, or an omission of

4   a fact the defendant was obliged to disclose."  *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101,

5   1119 (N.D. Cal. 2016) (internal quotation omitted).  Because the "rate-lock related statements" say

6   nothing about Wells Fargo paying the fee (and, in two instances, say nothing of the fees at all),

7   Plaintiff has not alleged that those statements were contrary to any allegedly omitted information.

8       Nor has Plaintiff alleged any other basis giving rise to a duty to disclose.  He concedes that

9   Wells Fargo did not owe him a fiduciary duty.  *See* Opp. at 8.  He claims—in a footnote[11]—that

10  Wells Fargo had exclusive knowledge of material facts, but never addresses the complaint's multiple

11  references to information, publicly-available long before his loan closed, that discussed Wells

12  Fargo's alleged wrongful charging of rate lock extension fees.  *See, e.g.*, FAC, ¶¶ 27, 63.  He also

13  never explains how Wells Fargo had exclusive knowledge of those "facts" when those same "facts"

14  form the basis for his claims.  *See Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal.

15  2014) (complaint's reference to a news article published months before the plaintiffs purchased their

16  phones precluded their allegation of exclusive knowledge: "Plaintiffs have not only failed to

17  affirmatively allege [defendant's] 'exclusive knowledge' and Plaintiffs' inability to reasonably

18  access this information, Plaintiffs appear to have pled facts suggesting the opposite."); *Herron v.*

19  *Best Buy Co., Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (plaintiff could not allege exclusive

20  knowledge regarding alleged laptop battery defects because he "purchased his laptop more than nine

21  months after information criticizing the [battery] was disseminated") (internal quotation omitted).

22      Regarding "active concealment" or "suppression" of facts, Plaintiff merely references

23  paragraphs 84, 92, and 93 of the FAC,[12] which are entirely conclusory.[13]  When the plaintiff's "only

24  _____

25  *Alienware Corp.*, 544 F. Supp. 2d 964, 973-74 (N.D. Cal. 2008); *In re: Sony Grand Wega KDF-E*
    *A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1088-89 (S.D. Cal.

26  2010).

    [11] Opp. at 8 n.4.

27  [12] Opp. at 8 n.3.

    [13] "Defendants misrepresented, concealed, or failed to disclose the truth," "Wells Fargo did not

28  reveal its systematic effort to charge borrowers mortgage rate lock fees," and "Wells Fargo owed

1    active concealment allegation is the conclusory assertion that Defendants 'actively concealed

2    material facts from Plaintiff and the Class,'" the "allegation is deficient since Plaintiff fails to allege

3    any specific facts demonstrating that Defendants actively tried to conceal the existence of the

4    [alleged defects]." *Herron*, 924 F. Supp. 2d at 1176 (citation omitted).  Moreover, mere

5    nondisclosure cannot constitute active concealment as a matter of law.  *See id*.  Plaintiff does not

6    address any of these pleading deficiencies, effectively conceding them.  *See Ramirez v. Ghilotti*

7    *Bros. Inc*., 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (deeming argument conceded when plaintiff

8    failed to address it in his opposition).

9         Next, regarding reliance, Plaintiff still does not state whether he actually read any of Wells

10   Fargo's alleged statements, much less what action he took in response.  Instead, he doubles down on

11   the conclusory allegation that he and the absent class members "reasonably relied" upon Wells

12   Fargo's statements and concealments.  Opp. at 9 (citing FAC, ¶¶ 65, 122).  That does not satisfy

13   Rule 9(b), aptly demonstrated by the cases cited and discussed in Wells Fargo's opening brief.[14]

14   Plaintiff does not attempt to distinguish any of them.  *See* Opp. at 8-9.

15        Plaintiff's cited cases do not help his arguments.  In *Baggett v. Hewlett-Packard Co*., 582 F.

16   Supp. 2d 1261, 1264-65 (C.D. Cal. 2007), and *Bronson v. Johnson & Johnson, Inc*., No. C 12-04184

17   CRB, 2013 WL 5731817, at *7 (N.D. Cal. April 16, 2013), the plaintiffs alleged that they actually

18   saw and acted upon the defendant's purportedly fraudulent statements.  Similarly, in *Ehret*, 68 F.

19   Supp. 3d at 1129, the plaintiff's allegations demonstrated that she had actually read the statements at

20   issue.  Finally, in *Gomez v. Carmax Auto Superstores Cal., LLC*, No. 2:14-cv-09019-CAS (PLAx),

21   2015 WL 350219, at *7 (C.D. Cal. Jan. 22, 2015), the court dismissed the fraud claims based on the

22   plaintiff's failure to allege "when she saw and heard the internet advertisements, website statements,

23   and radio advertisements she contends were misleading."  (internal quotation marks omitted).

24   Instead, the plaintiff alleged "only that at some point in time prior to purchasing … , she saw the

25   defendant's advertisements … ."  *Id*.  Here again, Plaintiff never alleges that he read any of Wells

26   Fargo's "rate-lock related statements" at all.  Accordingly, has not adequately alleged reliance, and

27

---

Plaintiff and Class Members a duty to disclose."

28   [14] *See* Op. Br. at 9-10.

1   his UCL claim should be dismissed.

2                    **b.      Plaintiff's "Unfair" and "Unlawful" UCL Claims Fail.**

3          An "unlawful" UCL claim fails if the underlying statutory violation fails. *See Altman v. PNC*

4   *Mortg.*, 850 F. Supp. 2d 1057, 1066 (E.D. Cal. 2012). As demonstrated in the opening brief and

5   herein, Plaintiff's RESPA and TILA claims fail. He also cannot rely on the complaint's conclusory

6   reference to "Regulation N." Although Plaintiff now states that he bases that claim on Wells Fargo's

7   alleged "failure to disclose the rate-lock scheme in its advertising of rate-lock services,"[15] a failure to

8   disclose an intended tort cannot state a claim for relief. *See* pages 14-15, *infra*. The "unlawful"

9   claim should be dismissed.

10         Plaintiff's "unfair" claim also fails. Plaintiff argues that the following allegations support his

11  "unfair" UCL claim:

12      Whether Wells Fargo has engaged in unfair methods of competition, unconscionable acts or
13      practices, and unfair and deceptive acts or practices with the sale of its financial products.

14      Wells Fargo tells borrowers that they "can count on Wells Fargo, the nation's #1 home lender."
        In its description of Rate Lock Extension Fees, Wells Fargo did not or does not disclose that it
15      will charge those fees to borrowers even when the bank is at fault for a delay in closing. That
        failure to disclose relevant information makes Wells Fargo's statements misleading and
16      deceptive. That same behavior was and is unfair to Wells Fargo's borrowers because it is
        contrary to established public policy, immoral, unethical, oppressive or unscrupulous, causing
17      injury to consumers that outweighs its benefits. It also was and is unlawful.

18  Opp. at 6 (citing FAC ¶¶ 57, 83). Of course, the first allegation is a properly-disregarded legal

19  conclusion relating to Rule 23. The remaining allegation reveals that the "unfair" claim is based on

20  the same purported conduct underlying the "fraudulent" claim. Courts in this district have held that

21  where the business practices underlying the "unfair" UCL claim overlap entirely with those

22  underlying the "fraudulent" claim, the unfair claim cannot survive if the fraudulent claim does not

23  survive. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).

24  Accordingly, Plaintiff's "unlawful" UCL claim fails for the same reasons his "fraudulent" claim

25  fails.[16]

26  _____

27  [15] Opp. at 7.

28  [16] In any event, it is not "immoral, unethical, oppressive or unscrupulous," *Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913, 928 (N.D. Cal. 2012), nor does it violate some "legislatively declared policy …

1

**B.      Nevada's DTPA Does Not Apply to Real Estate Lending Transactions.**

2

Just last year, the Ninth Circuit "predict[ed] that the Supreme Court of Nevada would hold

3

that real estate loans do not fall within the DTPA." *Dowers v. Nationstar Mortg., LLC*, 852 F.3d

4

964, 972 (9th Cir. 2017).  Plaintiff urges this Court to disregard *Dowers* in favor of what he deems

5

"controlling Nevada case law to the contrary."  Opp. at 15.  But as Plaintiff admits, the Supreme

6

Court of Nevada has never squarely addressed—much less held—that the DTPA applies to real

7

estate loans.  *See id*.  Nor has the Nevada Court of Appeals.  *See id*.  Accordingly, none of Plaintiff's

8

cases are controlling.  Because *Dowers* squarely addressed the issue, this Court should follow it and

9

hold that the DTPA does not apply to Plaintiff's mortgage loan.[17]

10

Nor is there any merit to Plaintiff's argument that his "claims are based in part on provisions

11

of the DTPA that are not limited to the sale of goods and services," citing Nev. Rev. Stat.

12

§§ 598.015(15) and 598.0923(4)—neither of which is referenced in the complaint.  Opp. at 16.  "It is

13

axiomatic that [a] complaint may not be amended by briefs in opposition to a motion to dismiss."

14

*Strome v. DMBK Enters., Inc*., No. 14-cv-02398-SI, 2014 WL 6485533, at *8 n.5 (N.D. Cal. Nov.

15

19, 2014) (citations omitted).  In any event, in *Dowers*, 852 F.3d at 972, the Ninth Circuit held that

16

those provisions do not apply to real estate transactions, and the complaint does not contain a single

17

allegation supporting Plaintiff's new, unpled claim that he was "coerced" or that Wells Fargo used

18

"duress or intimidation."  The DTPA claim should be dismissed.

19

**C.      Plaintiff's RESPA Claim Should Be Dismissed.**

20

Plaintiff does not dispute that "[i]n order to establish a violation of § 2607(b), a plaintiff must

21

demonstrate that a charge for settlement services was divided between two or more persons."

22

*Freeman v. Quicken Loans, Inc*., 566 U.S. 624, 638 (2012).[18]  Understandably, Plaintiff has backed

23

---

24

or threatened impact on competition," *id*., to tell borrowers that if their loan does not close by the
end of the rate-lock period, they must pay a fee if they wish to extend the lock.  Closing delays

25

happen all the time for all sorts of reasons.  Although Wells Fargo sometimes paid the fee if the
delay was caused by Wells Fargo, this does not mean that its conduct was "unfair" under the UCL.

26

[17] Plaintiff does not address the multiple other cases in the opening brief which hold that the DTPA
does not apply to real estate transactions.  *See* Opp. at 15-16.

27

[18] In *Freeman*, 566 U.S. at 629, the Supreme Court considered whether § 2607(b) "prohibits the
collection of an unearned charge by a single settlement-service provider, or whether it covers only

28

transactions in which the provider shares a part of a settlement-service charge with one or other

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

1   away from his claim that WFHM and WFBNA (the same entity) "split" rate lock fees with itself, but

2   still claims that those separately-named defendants split those fees with their "parent company,"

3   Wells Fargo & Company (a financial holding company that does not conduct banking operations) in

4   some unspecified manner.  Plaintiff's naked allegations fail to state a claim under § 2607(b).  *See*

5   *Andujar v. Deutsche Bank Nat'l Trust Co*., No. 14-7836, 2015 WL 4094637, at *8 (D.N.J. July 7,

6   2015) ("Th[e] bare invocation of the legal standard [under § 2607(b)] without factual support will

7   not suffice.").  And, his reference to a later voluntary refund program[19] has no bearing on alleged

8   ***fee-splitting*** at loan closing, which is required for a violation of § 2607(b).

9           Contrary to Plaintiff's claim, *Edwards v. First Am. Corp*., 798 F.3d 1172 (9th Cir. 2015), is

10   not controlling.  *Edwards* considered whether the district court abused its discretion in denying class

11   certification on the plaintiff's claim under § 2607(a), which prohibits kickbacks in exchange for

12   referrals.  *Id*. at 1176.  The plaintiff alleged that the defendant purchased ownership interests in title

13   agencies in exchange for future title insurance referrals, and that this arrangement was an illegal

14   kickback under § 2607(a).  *Id*. at 1176-77.

15           On appeal, the defendant did not argue, as Plaintiff claims, that "at least two persons meant

16   two unrelated corporate entities."  *See* Opp. at 12.  Rather, the defendant argued that because

17   "certain agencies [we]re majority-owned," it "c[ould] not refer business to itself," thus creating

18   individualized inquiries under Rule 23 that depended on what title company a particular borrower

19   used.  *Edwards*, 798 F.3d at 1185.  In a single sentence, without any analysis, the Ninth Circuit

20   stated: "[Defendant] and its majority-owned title agencies are not the same person, but separate legal

21   entities."  *Id*.  The court thus reasoned that no separate inquiries were necessary.  *Id*.  Because

22   *Edwards* addressed class certification under Rule 23, not the merits of the plaintiff's claims, it does

23   not control here.  Indeed, the *Edwards* court confirmed that it did not intend to rule on the merits

24   ofthe plaintiff's claims:

25           Our focus now is to decide whether the issues relating to the alleged common scheme
           predominate over individual issues for the proposed class, so that the case should be certified
26

27   ───────────────────
     persons who did nothing to earn that part."  The Court held the latter.  *See id*.

28   [19] Opp. at 12.

1  for class adjudication.  We cite [Defendant']s alleged practices not as bearing on the merits but
2  as bearing on [its] common scheme—as alleged in the complaint—that predominates over
   individual issues for certain class members.

3  *Id*. at 1183.[20] (internal citations omitted).

4      For these reasons, and the reasons stated in the opening brief, the Court should hold that, for
5  purposes of § 2607(b), a "parent company" and its subsidiary are not separate "persons."  This
6  interpretation is the most logical and is supported by holdings in analogous contexts, including
7  antitrust, RICO, and state-law tort claims.  *See* Opening Br. at 15-17.

8      **D.      The Court Should Reject Plaintiff's Attempt to Rewrite TILA.**

9      The Court easily can dispose of Plaintiff's TILA claim, which finds no support in the statute.
10  Under 15 U.S.C. § 1638(a), lenders must disclose fees—not underlying business practices.  Plaintiff
11  does not dispute that Wells Fargo used the CFPB's model disclosure form, or that, under TILA, a
12  lender's use of the model form "shall be deemed to be in compliance with the disclosure provisions
13  [of TILA]."  15 U.S.C. § 1604(b).  Instead, Plaintiff falsely argues that Wells Fargo did not "disclose
14  the need to pay an additional fee," even though his complaint includes a "snapshot" from his Closing
15  Disclosure—which plainly disclosed the $287.50 rate lock extension fee.  Opp. at 15; FAC, ¶ 50.
16  Plaintiff also cites no authority allowing the Court to expand TILA's carefully defined disclosure
17  obligations.  His TILA claim is legally baseless, and the Court should dismiss it with prejudice.

18      **E.      Plaintiff's Conversion Claim Fails.**

19      As explained in the opening brief, Plaintiff's conversion claim fails because he essentially
20  alleges an overcharge on his closing costs, and because he relinquished control over the money when
21  he paid it to Wells Fargo.  *See* FAC, ¶ 49.  Now, Plaintiff argues that Wells Fargo's charging of the
22  fee was duress because (1) it was part of the closing costs and (2) he thus had to pay it in order to
23  close the loan.  *See* Opp. at 16.  In the same breath, he argues that the fee stands apart from the

24
25  [20] Plaintiff apparently misunderstands Wells Fargo's reliance on *Freeman*, 566 U.S. 624, *Haug v.
    Bank of Am*., 317 F.3d 832, 836 (8th Cir. 2003), *Boulware v. Crossland Mortg. Corp*., 291 F.3d 261,
26  265 (4th Cir. 2002), and *Echevarria v. Chi. Title & Trust Co*., 256 F.3d 623, 627 (7th Cir. 2001),
    arguing that these cases only involved one defendant and thus are not relevant.  *See* Opp. at 12-13.
27  Wells Fargo did not cite these cases because they are factually apposite, but because they stand for
    the position that to violate § 2607(b), fees must be split with a third-party.  What qualifies as a "third
28  party" is the subject of Wells Fargo's motion.

1   closing costs and thus is not an overcharge.  *See id.*  Those inconsistent arguments fail.

2   An overcharge is not conversion since the plaintiff lacks the required element of "ownership

3   or right to possession of the property at the time of the conversion."  *Williamson v. Reinalt-Thomas*

4   *Corp.*, No. 5:11-CV-03548-LHK, 2012 WL 1438812, at *5 (N.D. Cal. Apr. 25, 2012) (internal

5   quotation marks omitted).  In *Razuki v. Equity Residential Mgmt., LLC*, No. 15-CV-1057-BEN

6   (JLB), 2016 WL 337758 (S.D. Cal. Jan. 26, 2016), for instance, the plaintiff was charged, and paid,

7   a late fee on his residential rental payment.  *Id.* at *1.  Later, he filed a class action complaint against

8   the defendant property management company, alleging that the late fee violated California law.  *See*

9   *id.*  The court dismissed the conversion claim, finding it "more similar to the overcharge cases where

10  courts have dismissed conversion of money claims."  *See id.* at *3.

11  Here, Plaintiff presumably would argue (1) the *Razuki* plaintiff was subject to "fraud or

12  duress" because not paying the late fee could have subjected him to breach of his lease agreement

13  and eviction; and (2) the late fee in *Razuki* was separate from the rent and thus, not an overcharge.

14  *See* Opp. at 16.  The *Razuki* court disagreed, and this Court likewise should reject Plaintiff's strained

15  attempt to avoid black-letter California law.  Conversion cannot lie when it is based on an

16  overcharge because when money is paid, ownership of the money passes to the payee, negating the

17  first element of conversion.  *See, e.g.*, *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491

18  (2006); *Williamson*, 2012 WL 1438812, at *5; *Util. Consumers' Action Network v. Sprint Sols., Inc.*,

19  No. C07-CV-2231-W RJB, 2008 WL 1946859, at *8 (S.D. Cal. Apr. 25, 2008).

20  Plaintiff also argues that "voluntariness" is "merely a factor in finding that the defendant's

21  behavior was not wrongful,"[21] but this is wrong.  "A plaintiff in a conversion action must also prove

22  that it did not consent to the defendant's exercise of dominion."  *Bank of N.Y. v. Fremont Gen.*

23  *Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).  As Plaintiff acknowledges, the Price Range Protection

24  Agreement "gave Wells Fargo the right to charge an extension fee."  Opp. at 18.  Although Plaintiff

25  disagrees with how Wells Fargo exercised that right, in a conversion claim, the issue is whether the

26  plaintiff consented to the fee.  *Cf. Walters v. Target Corp.*, No. 3:16-CV-01678-L-MDD, 2017 WL

27

28  [21] *See* Opp. at 16.

1   3721433, at *4 (S.D. Cal. Feb. 14, 2017), *on reconsideration in part*, 2017 WL 4700087 (S.D. Cal.

2   Oct. 19, 2017) (dismissing conversion claim because agreement at issue explained how and when

3   fees would be charged and plaintiff consented to the charge).  Plaintiff admits he was bound by the

4   Price Range Protection Agreement, and, instead of having his lock period expire and his interest rate

5   reset to market rates, he chose to keep his rate by extending the lock period and paying the fee.  *See*

6   FAC, ¶¶ 50, 105-07.  Therefore, his consent precludes his conversion claim.

7          **F.      Plaintiff's Implied Covenant Claim Fails.**

8          The plain language of the Price Range Protection Agreement guts Plaintiff's implied

9   covenant claim.  As this Court noted in a case Plaintiff cites, "if the defendant did what it was

10  expressly given the right to do, there can be no breach of the implied covenant."  *Levin v. Citibank,*

11  *N.A.*, No. C-09-0350 MMC, 2009 WL 3008378, at *6 (N.D. Cal. Sept. 17, 2009) (Chesney, J.)

12  (internal quotation omitted).

13         Here, the Price Range Protection Agreement provides, "[A]t the option of Wells Fargo Bank,

14  N.A., you may be permitted to keep your rate the same by paying an extension fee to extend the rate

15  lock."  FAC, ¶ 107.  Thus, under the Agreement's plain language, if an "implied covenant" exists in

16  the language Plaintiff cites, it applies to the granting of the extension, not to the charging of the fee.

17  *See id*.  This reading is even clearer when viewed in the context of the Agreement's preceding

18  sentences.  The Agreement explains that if the loan does not close by the expiration of the lock

19  period, the "loan will be repriced and this may result in pricing increases."  *Id*.  In order to avoid

20  those potential increases, Wells Fargo may allow the borrower to extend the lock period, subject to

21  the borrower's payment of a fee.  *See id*.  Thus, being charged the fee to extend the lock period is

22  precisely what Plaintiff agreed to.  Plaintiff's implied covenant claim fails.  *See Levin*, 2009 WL

23  3008378, at *7.

24         **G.      Plaintiff's Fraudulent Concealment Claim Fails.**

25         In his Opposition, Plaintiff claims that his fraudulent concealment claim is "three-fold: the

26  charging of the improper fee, half-truths in its disclosure about rate locks, and the failure to

27  disclose[the alleged scheme]."  Opp. at 19.  None of those theories withstands scrutiny.

28         First, Plaintiff does not explain how "the charging of the improper fee" constitutes fraudulent

1   concealment.  He admits that Wells Fargo disclosed the amount of the fee he was charged.  This

2   allegation fails.

3          Second, as described in Wells Fargo's opening brief and at pages 5-6, *supra*, Plaintiff's

4   "half-truths" theory fails because he has not alleged a duty to disclose in connection with Wells

5   Fargo's "rate-lock related statements."

6          Next, California law is clear: there is no duty to disclose a purported "scheme."  *LiMandri v.*

7   *Judkins*, 52 Cal. App. 4th 326 (1997), is controlling and remains the law.  *See Bank of Am. Corp. v.*

8   *Super. Ct.*, 198 Cal. App. 4th 862, 872-73 (2011); *see also Deteresa v. Am. Broad. Cos., Inc.*, 121

9   F.3d 460, 467-68 (9th Cir. 1997).  Plaintiff has no answer for these cases, other than to argue that a

10  contractual relationship creates a duty to disclose an alleged "scheme."  *See* Opp. at 19.  The law is

11  not that simple.  As the *LiMandri* court explained, "[t]here are four circumstances in which

12  nondisclosure or concealment may constitute actionable fraud": a fiduciary relationship, "exclusive

13  knowledge of material facts," active concealment, and partial representations coupled with the

14  suppression of material facts.  52 Cal. App. 4th at 336-37.  Each of these circumstances

15          presupposes the existence of some other relationship between the plaintiff and defendant in
        which a duty to disclose can arise. … As a matter of common sense, such a relationship can
16      only come into being as a result of some sort of transaction between the parties.  Thus, a duty
        to disclose may arise from the relationship between seller and buyer, employer and prospective
17      employee, doctor and patient, or parties entering into any kind of contractual agreement.  All
        of these relationships are created by transactions between parties from which a duty to disclose
18      facts material to the transaction arises ***under certain circumstances***.

19  *LiMandri*, 52 Cal. App. 4th at 336-37 (emphasis added) (internal citations omitted).  By selectively

20
21  quoting this passage, Plaintiff suggests that the very existence of a contract makes a nondisclosure or

22  concealment a fraud.  The highlighted language demonstrates that is not the case.  Rather, this

23  passage in *LiMandri* stands for the unremarkable proposition that a party having no relationship with

24  a defendant cannot sue that defendant for fraud,[22] and that even when a relationship exists, the

25  plaintiff still must show that "certain circumstances" exist—*i.e.*, one of the four circumstances

26  giving rise to a duty to disclose.  *See id.*

27  ───────────────
    [22] In *LiMandri*, 52 Cal. App. 4th at 337, the plaintiff had a single conversation with the defendant
28  and thus could not show that he had any relationship with the defendant.

1  Plaintiff also has not alleged reliance.  *See* Opening Br. at 9-10, 24 and page 7, *supra*.
2  Plaintiff knows whether he read Wells Fargo's statements or not, and what, if anything, he did in
3  response.  His failure to allege those facts is fatal to his claim.

4  Finally, the economic loss rule bars the fraud claim.  Although Plaintiff argues that he meets
5  the "independent duty" exception to this rule, his cited cases demonstrate that he does not.  In each
6  case, the defendants actively "covered up" their misdeeds, including (1) providing fraudulent
7  documentation to make it look like they were complying with the contract,[23] (2) hiding a prior
8  relationship with a fraudster in order to induce the plaintiff to enter into the contract, which allowed
9  the fraudster to steal the plaintiff's money,[24] and (3) secretly using substandard materials and
10  engaging in a wide-ranging scheme to prevent the plaintiff from finding out.[25]  As shown at pages
11  13-14 above, Plaintiff alleges no such "cover up."  He also acknowledges that he disagreed with
12  Wells Fargo's decision that he should pay the extension fee, but that he decided to extend his lock
13  period and pay the fee anyway.  FAC, ¶¶ 50-51.  Finally, Plaintiff does not address Wells Fargo's
14  showing that his fraud and implied covenant claims are based on the same alleged conduct and seek
15  the same damages.  FAC, ¶¶ 108, 112, 115, 124.  For all these reasons, the economic loss rule bars
16  his fraud claim.

## CONCLUSION

19  For the foregoing reasons and the reasons stated in the opening brief, Defendants request that
20  the Court dismiss Plaintiff's Amended Complaint in its entirety.

21  Dated: April 12, 2018                    WINSTON & STRAWN LLP

23                                    By:   */s/ Amanda L. Groves*
                                          Amanda L. Groves
24                                        Attorneys for Defendants

---

[23] *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004).
[24] *Bentham v. Bingham Law Grp.*, No. 13cv1424-MMA (WVG), 2013 WL 12186171, at *7, 12 (S.D. Cal. Nov. 15, 2013).
[25] *Std. Furniture Mfg. Co. v. LF Prods. PTE. Ltd.*, No. SACV16-02097-CJC(KESx), 2017 WL 3082221, at *2, 4-5 (C.D. Cal. June 13, 2007).