IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MUNIZ,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>    Defendants. | Case No. 17-cv-04995-MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING DEFENDANTS' MOTION TO STRIKE; AFFORDING LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 60, 61 |

    Before the Court are defendants Wells Fargo & Company ("WF&C"), Wells Fargo Bank N.A. ("WFBNA"), and Wells Fargo Home Mortgage's ("WFHM") Motion to Dismiss and Motion to Strike, both filed February 1, 2018. Plaintiff Victor Muniz ("Muniz") has filed opposition, to which defendants have replied.[1] The Court, having read and considered the papers filed in support of and in opposition to the motions, rules as follows.

---

[1] Subsequent to the above filings, Muniz filed a "Request for Judicial Notice" ("Request") whereby Muniz seeks judicial notice of three Consent Orders issued in "federal administrative proceedings," which orders, Muniz argues, are relevant to issues raised in defendants' Motion to Strike. (See Dkt. No. 70.) At the outset, the Court notes the Request was not filed in compliance with the Civil Local Rules of this District. See Civil L.R. 7-3(d) (providing, "[o]nce a reply is filed, no additional memoranda, papers, or letters may be filed without prior Court approval, except . . . a Statement of Recent Decision, containing a citation to and providing a copy of the new opinion–without argument"). Moreover, the Request is moot, as the Motion to Strike, as set forth below, has been denied. Accordingly, the Request is hereby DENIED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**[2]

WF&C, a Delaware corporation with its "principal place of business in San Francisco, California," is a "financial services company" that "provides banking, insurance, investments, mortgage, and consumer and commercial finance" services. (See FAC ¶ 15.) WFBNA, a "national banking association chartered under the laws of the United States with its primary place of business in Sioux Falls, South Dakota," is WF&C's "principal subsidiary," and "provides [WF&C] personal and commercial banking services [and] engages in mortgage lending." (See id. ¶ 16.) WFHM "is a division of [WFBNA] and has its principal place of business in Des Moines, Iowa." (See id. ¶ 17.)

In June 2017, Muniz, a "resident and citizen of Clark County, Nevada" (see id. ¶ 14), "found" a Nevada house and sought a "home loan secured by a mortgage." (See id. ¶¶ 45-46.) On June 29, 2017, Muniz, obtained a "loan estimate" from "Wells Fargo,"[3] which estimate "included a quoted interest rate of 5.875%," as well as a "'rate-lock,'" by which "the Bank . . . commit[ed] to fund[ing] [Muniz's] loan at [the] stated interest rate *if the home purchase and loan close[d]*" by August 7, 2017. (See id. ¶¶ 20, 46 (emphasis in original).) The "rate-lock" was included in a "Lock-In Agreement[]" that provides as follows:

> This pricing is valid until the Expiration Date of Rate Lock shown above. If loan does not close and funds disbursed on or before the expiration date, your loan will be re-priced and this may result in pricing increases. However, at the option of [WFBNA], you may be permitted to keep your rate the same by paying an extension fee to extend the rate lock.

(See id. ¶¶ 105-06, 119.) Muniz "diligently provided Wells Fargo all the information the Bank requested to process the financing, but the process was bogged down by Bank-caused delays[;] [f]or example, communication issues between the Bank and the appraiser it hired, who was apparently out of the country." (See id. ¶ 47.) On August 8, 2017, the day after the rate-lock period expired, "the Bank issued an updated closing

---

[2] The following facts are taken from the First Amended Complaint ("FAC").

[3] In the FAC, Muniz refers to defendants collectively as "Wells Fargo."

2

1  disclosure that included . . . a $287.50 fee for 'Borrower Paid Rate Lock Extension,'"
2  which fee Muniz paid.  (See id. ¶ 48.)

Based thereon, Muniz asserts the following seven Causes of Action: (1) "Real Estate Settlement Procedures Act ["RESPA"], 12 U.S.C. § 2601, et seq."; (2) "Truth in Lending Act ["TILA"], 15 U.S.C. § 1601, et seq."; (3) "Unfair, Unlawful, or Fraudulent Business Practices under the California Unfair Competition Law ["UCL"], Cal. Bus. & Prof. Code § 17200 et seq."; (4) "Violations of Nevada Deceptive Trade Practices Act ["DTPA"], Nev. Rev. Stat. § 598.0903, et seq."; (5) "Conversion"; (6) "Breach of Implied Covenant of Good Faith and Fair Dealing"; and (7) "Fraud by Concealment."

By the instant motion, defendants move to dismiss the FAC in its entirety pursuant to Rule 12(b)(6), and to strike Muniz's class and tolling allegations pursuant to Rule 12(f).

## II. MOTION TO DISMISS

### A. Legal Standard

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

3

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**B. Discussion**

Defendants move to dismiss each of the seven Causes of Action alleged in the FAC. The Court addresses each Cause of Action in turn.

### 1. RESPA (First Cause of Action)

Muniz contends WFBNA and WFHM "share unearned rate-lock extension fees with [WF&C]" (see Opp. at 12:1-3), in violation of 12 U.S.C. § 2607, under which "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." See 12 U.S.C. § 2607(b).[4]

To plead a violation of § 2607(b), a plaintiff must show that a "charge for settlement services was divided between two or more persons." See Freeman v. Quicken Loans, Inc., 566 U.S. 624 (2012).[5] Here, the parties disagree as to whether a corporate parent, such as WF&C, and a corporate subsidiary, such as WFBNA and/or WFHM, constitute separate persons under § 2607(b). Neither party, however, has provided any authority directly addressing the question. Rather, each cites to decisions in which the circumstances are distinguishable from those presented here. (See, e.g.,

---

[4] Although not raised by defendants, the Court notes a question may exists as to whether the fee here at issue constitutes a "charge made or received for the rendering of a real estate settlement service." See Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1194-95 (11th Cir. 2010) (holding fee collected "in exchange for an interest rate below market" was "part of loan agreement, not a . . . 'settlement service'" under RESPA) (internal quotation and citation omitted).

[5] Under RESPA, "'person' includes individuals, corporations, associations, partnerships, and trusts." See 12 U.S.C. § 2602(5).

4

Mot. at 16:14-17 (citing Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 777 (holding parent and wholly owned subsidiary "are incapable of conspiring with each other for purposes of § 1 of the Sherman Act")); Opp. at 12:11-12 (citing Edwards v. First American Corp., 798 F.3d 1172, 1185 (9th Cir. 2015) (holding, where plaintiff brought claim under 12 U.S.C. § 2607(a), title insurer and "certain captive title agencies" of which title insurer was majority owner were "not the same person")).)[6]

In any event, the Court cannot resolve the above-referenced dispute at this time, because, as defendants point out, Muniz has alleged no facts to support his conclusory allegation that either WFBNA or WFHM did split any rate-lock extension fees with WF&C, let alone the circumstances under which such split occurred. To the extent Muniz cites to an announcement made by WF&C, in which WF&C characterizes itself as providing "banking, insurance, investments, mortgage, and consumer and commercial finance," and describes a plan to "refund customers who believe they shouldn't have paid [rate-lock extension] fees" (see FAC Ex. A), Muniz's reliance thereon is unavailing, as such statements, contrary to Muniz's argument, do not give rise to a reasonable inference of fee splitting.

Accordingly, Muniz's First Cause of Action will be dismissed with leave to amend.

### 2. TILA (Second Cause of Action)

TILA requires creditors to disclose: (1) "the finance charge," see 15 U.S.C. § 1638(a)(3);[7] and (2) "the aggregate amount of fees paid to the mortgage originator in connection with the loan, the amount of such fees paid directly by the consumer, and any additional amount received by the originator from the creditor," see id. § 1638(a)(18).

---

[6] Section 2607(a) provides: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." See 12 U.S.C. § 2607(a).

[7] Under TILA, "finance charge" is defined as, inter alia, "loan fee[s], finder's fee[s], or similar charges." See id. § 1605(a)(3).

Here, Muniz alleges, defendants violated the above-referenced subsections by failing to disclose they "would charge borrowers finance charges/fees to extend the rate lock period in cases of bank-caused delay." (See FAC ¶ 77.) The FAC, however, contains facts showing defendants disclosed the existence and amount of the rate-lock extension fee. (See id. ¶ 50 (screenshot of Muniz's "closing documents" showing $287.50 charge for "Rate Lock Extension"), ¶ 119 (Muniz's "Lock-In Agreements," disclosing that, "at the option of [WFBNA], you may be permitted to keep your rate the same by paying an extension fee").)

Nothing more is required by TILA. Indeed, as defendants point out, the above-referenced information is consistent with that contained in sample forms published by the Consumer Financial Protection Bureau ("CFPB"), the use of which suffices to satisfy TILA's disclosure requirements. See 15 U.S.C. § 1604(b) (providing, "[a] creditor or lessor shall be deemed to be in compliance with the disclosure provisions of [TILA] with respect to other than numerical disclosures if the creditor or lessor . . . uses any appropriate model form or clause as published by the [CFPB]"); see, e.g., 12 C.F.R. Pt. 226, App. H-10 (CFBP "Credit Sale Sample") (requiring nothing more than numerical disclosures for "Finance Charge" and "Total of Payments").

Muniz's reliance on a statement by the Ninth Circuit, namely, that a meaningful disclosure must "'anticipat[e] any reasonable questions which consumers might have'" (see Opp. at 14:13-15 (quoting Hutchings v. Beneficial Fin. Co. of Oregon, 646 F.2d 389, 392 (9th Cir. 1981)), is misplaced. Read in context, the statement, contrary to Muniz's contention, does not stand for a general proposition that disclosures beyond those identified in § 1638 are required, but, rather, that those statutorily identified disclosures be clearly expressed. See id. (citing Pennino v. Morris Kirschman & Co., Inc., 526 F.2d 367 (5th Cir. 1976) (rejecting, where plaintiff alleged TILA violation based on regulation requiring periodic statements to include "date by which . . . payment must be made to avoid additional finance charges," defendant's argument that "it would be logical to assume" date from various entries in statement).

Accordingly, Muniz's Second Cause of Action is subject to dismissal without leave to amend.

### 3. UCL (Third Cause of Action)

Muniz alleges defendants violated the UCL by engaging in an "'unlawful, unfair, or fraudulent business act or practice[]'" (see FAC ¶ 82 (quoting Cal. Bus. & Prof. Code § 17200)), in particular, by charging Muniz the above-described rate-lock extension fee without disclosing defendants' practice of charging such fee to "faultless borrowers" (see FAC ¶¶ 82, 111).

At the outset, defendants argue, such claim, by which Muniz can only seek equitable relief, is subject to dismissal because Muniz, in light of his other claims, has an "adequate remedy at law." (See Mot. at 7:16.)

Courts in this district have taken differing positions on the issue. Compare Adkins v. Comcast Corp., No. 16-CV-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) (allowing claim seeking equitable relief to proceed along with claims seeking damages; noting "this Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings stage") with Munning v. Gap, Inc., 238 F. Supp. 3d 1195, 1205 (N.D. Cal. Feb. 24, 2017) (dismissing claim for equitable relief where plaintiff also asserted claims for damages; noting "[i]t matters not that a plaintiff may have no remedy if her other claims fail"). At this stage of the proceedings, the Court is not persuaded that Muniz's UCL claim should be dismissed on the ground that Muniz has an adequate remedy at law. See State v. Altus Fin., S.A., 36 Cal. 4th 1284, 1303 (Cal. 2005) (holding "the fact that there are alternative remedies under a specific statute does not preclude a UCL remedy, unless the statute itself provides that the remedy is to be exclusive") (citing Cal. Bus. & Prof. Code § 17205); see also Fed R. Civ. P. 8(a)(3) (providing "demand for relief . . . may include relief in the alternative or different types of relief").

Defendants next argue Muniz has failed to allege facts sufficient to support

7

extraterritorial application of the UCL. The Court Agrees.

As noted, Muniz alleges he is a resident of Nevada and the house for which he sought a loan is located in Nevada. Although the UCL "may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California," see Norwest Mortg., Inc. v. Superior Court, 72 Cal. App. 4th 214, 224-25 (Cal. Ct. App. 1999), the FAC contains no facts to support Muniz's conclusory allegation that defendant's "scheme . . . emanated from California" (see FAC ¶ 85), or any other factual allegations showing the acts that form the basis of Muniz's claim occurred in California. Indeed, the letter on which Muniz relies makes clear the author is not purporting to describe WFHM's practices beyond a limited geographic area (see id. Ex. B (letter by former WFHM employee) at 7 (stating: "I can only speak to my experience with [WFHM] in the Los Angeles region.")). Muniz's reliance on an allegation in the FAC that WF&C has its "headquarters" in California and that defendants' conduct has "harmed a large but yet-to-be-determined number of California borrowers" (see id. ¶ 85), likewise is unavailing, see Cannon v. Wells Fargo Bank N.A., 917 F. Supp. 2d 1025, 1056-57 (N.D. Cal. Jan. 9, 2013) (holding fact that "[WF&C] has its principal place of business in California," thus making it "possible" improper mortgage servicing practices "emanated from California," and that "some of the class members will undoubtedly reside in California" insufficient to enable Florida resident to assert UCL claim predicated on mortgage on Florida home).

Accordingly, Muniz's Third Cause of Action will be dismissed with leave to amend.[8]

4. **DTPA (Fourth Cause of Action)**

Muniz alleges defendants, by "failing to disclose the Bank's practice of requiring borrowers to pay mortgage rate lock fees when Wells Fargo's delays caused the rate lock to expire" (see FAC ¶ 89), violated the DTPA, which, as Muniz correctly alleges,

---

[8] In light of such finding, the Court does not address herein defendants' additional arguments in support of dismissal of the Third Cause of Action.

8

"prohibits deceptive trade practices in the sale of goods or services" (see id.). As defendants point out, however, "a real estate loan is neither a good nor a service within the meaning of [the DTPA]." See Dowers v. Nationstar Mortg., LLC, 852 F.3d 964, 972 (9th Cir. 2017) (citing Nev. Rev. Stat. §§ 598.0915-598.0925, 598.0934) (holding, "[w]hile the Supreme Court of Nevada has not settled th[e] issue, we agree with the district court in predicting that the Supreme Court of Nevada would hold that real estate loans do not fall within the DTPA"); Orzoff v. BAC Home Loans Servicing, LP, No. 11-CV-1935-RCJ, 2012 WL 1681862, at *3 (D. Nev. May 11, 2012) (holding "the [DTPA] only prohibits deceptive conduct in connection with the purchase of goods and services, it does not apply to real estate loan transactions") (collecting cases); see also Harlow v. LSI Title Agency, Inc., No. 11-CV-01775-PMP, 2012 WL 5425722, at *5 (D. Nev. Nov. 6, 2012) (holding, "[a]lthough § 598.0915(15) is not specifically limited to transactions involving the sale or lease of goods or services, the plain language and overall organization of § 598.0915 indicate that subsection fifteen, like the rest of the transactions enumerated in the statute, applies to transactions involving the sale or lease of goods or services") (citing cases).

Muniz's reliance on Betsinger v. D.R. Horton, Inc., 126 Nev. 162 (Nev. 2010), which is readily distinguishable on its facts, is misplaced. See id. at 166 n.4 (holding developer could be held liable under DTPA for "deceptive sale of real property").

Accordingly, Muniz's Fourth Cause of Action is subject to dismissal without leave to amend.

**5.     Conversion (Fifth Cause of Action)**

Under California law, to state a claim for conversion, a plaintiff must allege: (1) his/her "ownership or right to possession of property"; (2) the "defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession"; and (3) "damage." See McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1491 (Cal. Ct. App. 2006).

Here, Muniz contends, defendants converted $287.50, the rate-lock extension fee

9

he paid. Muniz has not, however, cited to any authority suggesting liability for conversion can be found under the circumstances presented here. Although a claim for conversion may lie where a sum of money is voluntarily transferred, e.g., where "an agent accepts a sum of money to be paid to another and fails to make the payment," see McKell, 142 Cal. App. 4th at 1491, Muniz's claim is not based on misappropriation of the sum he paid, but, rather, a contention that he should not have been required to pay it in the first place. Under such circumstances, the claim fails. See, e.g., Darrin v. Bank of America, N.A., No. 13-CV-00228-MCE, 2013 WL 877087, at *7 (E.D. Cal. Mar. 7, 2013) (dismissing conversion claim where borrower "voluntarily" paid sum under terms of contract, but disputed creditor's claim to such sum).

Accordingly, Muniz's Fifth Cause of Action will be dismissed with leave to amend.

### 6. Breach of Implied Covenant of Good Faith and Fair Dealing (Sixth Cause of Action)

Under California law, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." See Wolf v. Walt Disney Pictures and Television, 162 Cal. App. 4th 1107, 1120 (Cal. Ct. App. 2008). An implied covenant, however, "will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." See id. (holding, "if the defendant did what it was expressly given the right to do, there can be no breach [of the implied covenant]").[9]

Here, Muniz alleges, defendants breached the implied covenant by "charg[ing] fees to faultless borrowers." (See FAC ¶ 111; see also Opp. at 18:18-20 ("Wells Fargo acted in bad faith, charging [p]laintiff for its own dilatory conduct.").) As set forth above, the "Lock-In Agreements" expressly provide: "If loan does not close and funds disbursed on or before the expiration date, your loan will be re-priced." (See FAC ¶ 107). In other

---

[9] The parties assume California law applies to Muniz's claim for breach of the implied covenant, and, consequently, for purposes of the instant order, the Court analyzes such claim under California law.

10

words, a rate-lock guarantees a quoted rate only for a limited period, irrespective of the cause of the loan's failure to close by the rate-lock expiration date. Similarly, the provision stating the borrower "may be permitted to keep [his/her] rate the same by paying an extension fee" (see id.), sets forth nothing more than an option that may be offered in the event such period, for whatever reason, expires before the loan closes and funds are disbursed. In sum, under the terms of the "Lock-In Agreements," WFBNA was expressly permitted to charge the fee challenged in the instant claim.

To the extent Muniz may be contending defendants intentionally delayed the closing of his loan, the FAC contains no facts to support such theory. Indeed, Muniz alleges the reason for the delay in his loan's closing was "communication issues between the Bank and the appraiser it hired, who was apparently out of the country." (See FAC ¶ 47).

Accordingly, Muniz's Sixth Cause of Action will be dismissed with leave to amend.

### 7. Fraud by Concealment (Seventh Cause of Action)

Under California law, to state a claim for fraud by concealment, a plaintiff must show (1) the defendant "concealed or suppressed a material fact," (2) the defendant was "under a duty to disclose the fact to the plaintiff," (3) the defendant "concealed or suppressed the fact with the intent to defraud the plaintiff," (4) the plaintiff was "unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact," and (5) "as a result of the concealment or suppression of the fact, the plaintiff . . . sustained damage." See Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 248 (Cal. Ct. App. 2011) (internal quotation and citation omitted). A duty to disclose arises where, inter alia, "the defendant makes partial representations but also suppresses some material facts," see LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997) (internal quotation and citation omitted), in other words, where "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead," see Warner Constr. Corp. v.

City of Los Angeles, 2 Cal. 3d 285, 294 (Cal. Ct. App. 1970).[10]

Here, Muniz contends, defendants made "partial representations" (see Opp. at 19:12) in their "Lock-In Agreements" and on their website by "not discuss[ing] that Bank-caused delays may result in borrowers paying [rate-lock extension] fees," and in their "Closing Disclosure" by listing the rate-lock extension fee and "not disclos[ing] that Wells Fargo's own actions caused the delay requiring the extension, and that Wells Fargo should have borne the cost." (See FAC ¶¶ 118-20.) The Court addresses each of the alleged "partial representations" in turn.

First, as noted above, the "Lock-In Agreements" are unambiguous; they make no representations that, in the absence of qualification, would be "likely to mislead." See Warner Constr. Corp., 2 Cal. 3d at 294. Muniz does not allege he was given any information that would render the otherwise clear terms of the agreement misleading, and it is of no consequence that Muniz may have hoped the agreement's terms would not apply if the expiration of the rate-lock period was caused by WFBNA's delays. See, e.g., S. City Motors, Inc. v. Auto. Indus. Pension Tr. Fund, No. 15-CV-01068-JST, 2015 WL 4638251, at *4 (N.D. Cal. Aug. 4, 2015) (dismissing fraudulent concealment claim predicated on theory of "partial representation[]" where "nothing in the [insurance policy's] definition of 'Employer' indicate[d]" defendants would not adopt challenged definition).

Next, the website includes no actionable partial representations. Indeed, the statements from the website do no more than define a "rate lock" and describe how borrowers may obtain one. (See FAC ¶ 118). Moreover, Muniz does not allege he visited the website, let alone that he relied on any of its statements he now quotes in the FAC. See Opperman v. Path, Inc., 84 F. Supp. 3d 962, 985 (N.D. Cal. Mar. 23, 2015) (dismissing fraudulent concealment claim predicated on theory of "partial representation[]" where plaintiffs "failed to plead that they saw, heard, or relied on [the]

---

[10] For purposes of the instant motion, the parties agree that the "'elements of a concealment claim under California and Nevada law are the same[.]'" (See Opp. at 18 n.8 (quoting Mot. at 23 n.15) (alteration in original).)

misrepresentations").

Lastly, as to the Closing Disclosure, the listing therein of a "$287.50 'Borrower-Paid' Rate Lock Extension Fee" (see FAC ¶ 120) does not constitute fraud by concealment. As discussed above, the agreement, on its face, permitted WFBNA to charge such fee irrespective of the circumstances under which the need for an extension arose, and there is nothing in the Closing Disclosure, or in any other alleged statement made by defendants, suggesting anything to the contrary. Moreover, the FAC contains no allegation that Muniz was, at the time he paid the fee, unaware of the "cause[] [for] the delay." (See id. ¶ 120.) Rather, Muniz alleges that, after receiving the Closing Disclosure, he "sent an email to several Wells Fargo employees, explaining that he was being charged a fee to extend his interest rate lock when the delay in closure was the Bank's fault, not his own." (See FAC ¶ 51.)

Accordingly, Muniz's Seventh Cause of Action will be dismissed with leave to amend.[11]

### III. MOTION TO STRIKE

In light of the Court's dismissal of all claims asserted in the operative pleading, and Muniz's opportunity to amend some of those claims, defendants' motion to strike the class allegations will be denied without prejudice to refiling after Muniz, if he chooses to do so, has filed an amended complaint.[12]

### CONCLUSION

For the reasons stated above:

1. To the extent defendants move to dismiss the Second and Fourth Causes of Action, the motion is hereby GRANTED without leave to amend.

---

[11] Given the above finding, the Court does not address herein the parties' respective arguments as to the applicability of the economic loss rule to Muniz's Seventh Cause of Action.

[12] In the event Muniz elects to amend and defendants again seek both a dismissal and an order striking the class and/or other allegations, defendants shall file a single motion encompassing both such requests for relief.

13

2. To the extent defendants move to dismiss the First, Third, and Fifth through Seventh Causes of Action, the motion is hereby GRANTED with leave to amend; Muniz's Second Amended Complaint, if any, shall be filed no later than June 1, 2018.

3. Defendants' motion to strike is hereby DENIED.

Lastly, the Further Case Management Conference, currently scheduled for June 8, 2018, is hereby CONTINUED to August 17, 2018.

**IT IS SO ORDERED.**

Dated: May 14, 2018

MAXINE M. CHESNEY
United States District Judge